OLIVE H. JONES, ADMINISTRATRIX OF THE ESTATE OF DARELD JAMES JONES, DECEASED *v.* INDIANAPOLIS POWER & LIGHT CO., COMBUSTION ENGINEERING, INC.

[No. 2-672-A26. Filed December 13, 1973. Rehearing denied February 21, 1974. Transfer denied May 17, 1974.]

*Paul G. Smith, Smith, Pearce & Barr,* of Noblesville, *Gleason, Woods & Johnson,* of Indianapolis, for appellant.

*Erle A. Kightlinger, Howard J. DeTrude, Jr., John T. Lorenz, Kightlinger Young Gray & DeTrude,* of Indianapolis, for appellee.

## CASE SUMMARY

BUCHANAN, P.J.—Plaintiff-Appellant Olive Jones (Jones) appeals from a judgment on the evidence entered by the trial court in a Wrongful Death action brought by her against Defendant-Appellee Indianapolis Power and Light Company (Ipalco), claiming that sufficient evidence was presented from which the jury could have found Ipalco negligent in causing the death of her husband (decedent), who was employed by a contractor retained by Ipalco to supply and install steam generating equipment.

We affirm.

## FACTS

The evidence most favorable to Jones' case is:

In March of 1968 Ipalco completed construction of Unit I of a power plant on land it owned in Petersburg, Indiana. Thereafter, construction began on Unit II, and on March 25, 1968 the accident occurred which resulted in the death of Jones' husband, Dareld James Jones (Decedent).

In connection with this construction project, Ipalco retained the services of Stone and Webster Engineering Corporation to prepare plans and specifications and act as supervisors of construction. As between Ipalco and Stone and Webster, Ipalco retained the power to award contracts and direct the progress of construction.

Ipalco contracted directly with several contractors to erect Unit II, including Combustion Engineering, Inc. (Combustion), Decedent's employer. Combustion was employed to sup-

ply and install steam generating equipment (boiler and ash hopper). Two contracts were executed between Ipalco and Combustion—one a "material only" contract by the terms of which Combustion was to furnish boiler equipment, and the second contract provided for the installation of the boiler equipment.

These two contracts and purchase orders issued thereunder contained provisions that:

All work to be done under the general supervision of Ipalco's engineers (Stone & Webster).

All work to comply with local ordinances, rules, regulations and statutes of the State of Indiana which were incorporated by reference.

All Combustion and Stone & Webster's employees to comply with all regulations of Ipalco regarding admission to the property.

Work to be performed under the direction and to the satisfaction of Ipalco and/or its engineer (Stone & Webster).

Combustion to conduct its operation so as to provide maximum safety for all employees and comply with all safety regulations of applicable laws as prescribed by Ipalco or its engineer, and promptly correct any unsafe conditions when directed to do so by the engineer.

Work coordination and scheduling to be subject to check by Stone & Webster.

Combustion to furnish and maintain all labor and special tools necessary for complete installation, including hoisting and hauling equipment.

To assist in installation of the generating equipment, Combustion installed a man and materials hoist on the exterior of the plant under construction. This hoist, or electrically operated elevator, was owned by Combustion and was inspected and maintained and used exclusively by its employees.

Decedent was employed by Combustion to operate this hoist.

On the morning of March 25, 1968, Decedent commenced operation of the hoist at about 8:00 A.M. and about 9:00 A.M., after he had taken a load of men approximately 100 feet above

the ground, the hoist stuck. Because the voice communication system was not operative, Decedent signaled by the use of gestures to Combustion ground-level employees that the hoist would not move. They then manipulated master override controls at the base of the hoist which caused the hoist car to descend about six feet where it came to rest upon Decedent, crushing him between the top of the car and the floor landing. Apparently he was trapped, with part of his body inside the hoist car and part on the floor landing when the car descended.

Decedent subsequently died from injuries thus received on April 18, 1968.

It was determined that the hoist stuck because a limit control switch on top of the hoist car became clogged with ice and snow; when cleaned away the hoist operated properly.

No warning devices were installed in the hoist car nor was a Combustion-owned public address system functional.

All persons involved in this episode were Combustion employees. The protective fencing around the base of the hoist carried the sign "C. E. Employees Only."

Ipalco's sole employee on the job site, the field engineer, was not present when Decedent sustained his injuries nor had he ever inspected or examined the hoist for safety although he did have some knowledge of prior malfunction of the hoist due to the frozen limit control switch.

Jones, as the Administratrix of this Estate, brought this Civil Action under the Indiana Wrongful Death Statute against Ipalco alleging its negligence both directly and by imputation from Combustion.

The case was tried before a Jury and at the conclusion of Plaintiff's evidence, Ipalco moved for judgment on the evidence which motion the trial court granted. This appeal followed.

## ISSUES

The issues raised by the parties may be consolidated thusly:

ISSUE ONE. Was there any evidence that Ipalco retained sufficient control over the manner and means of the performance of work under the contracts so as to render Ipalco liable for Combustion's negligence?

ISSUE TWO. Was there any evidence which could sustain Ipalco's liability under any exception to the rule exempting it from liability for the death or injury to a servant of an independent contractor?

As to ISSUE ONE, Jones contends that under the contracts between Ipalco and Combustion, Ipalco retained sufficient control over Combustion's work to render it liable for Combustion's negligence.

In response, Ipalco contends that the contract did not give Ipalco the right to control the manner and means of Combustion's performance of the work. Because of this absence of control, Ipalco argues, Combustion was an independent contractor and not a mere servant of Ipalco, and therefore its negligence (if any) may not be imputed to Ipalco.

As to ISSUE TWO, Jones maintains that, even if Combustion's role was that of an independent contractor, the evidence would warrant allowing the case to go to the jury because of certain exceptions to the general rule of non liability of an employer of an independent contractor for the latter's torts. These exceptions impose liability upon the employer (1) if the contract requires the performance of work intrinsically dangerous or (2) if the employer is charged by law or contract with the specific duty in question or (3) if the act to be performed will probably cause injuries to others unless due precaution is taken to avoid harm.

Under exception two Jones claims Ipalco was obligated under a specifically legally imposed duty to provide Decedent a safe place to work which duty was breached. Also, the

Dangerous Occupation Act[1] and certan administrative regulations[2] obligated Ipalco to insure that the hoist equipment conformed to the specifications set out therein. And last, that the contract imposed a specific duty upon Ipalco to require precautions to be taken to assure the safety of the hoist.

In response to these allegations, Ipalco contends that no evidence was presented from which a jury could find that a duty was owed by it to the Decedent under any of these exceptions.

Jones raises other questions in her brief which are either unsubstantial or have been waived pursuant to Rule AP. 8.3(A).

## DECISION

As consideration of the issues raised by this appeal necessarily involves the propriety of entering a judgment on the evidence in favor of a Defendant (Ipalco) at the close of Plaintiff's (Jones) case, a statement of the appellate rule governing our review of the trial court's action is appropriate:

> " 'On appeal we will consider only the evidence most favorable to the party against whom the Motion for Directed Verdict was made and all reasonable inferences from such evidence. (Citations omitted.)'

> "The quantum of evidence necessary for a plaintiff to avoid a directed verdict at the close of his evidence has been determined by our Supreme Court to *be any evidence or legitimate inference therefrom tending to support at least one of the plaintiff's allegations.* Specifically, our Supreme Court held in Hendrix v. Harbelis (1967), 248 Ind. 619, 623, 230 N.E.2d 315, 318, that:

> " 'It is only where there is a *total absence of evidence* or legitimate inferences in favor of plaintiff upon the issues, or where the evidence is without conflict and is susceptible

---

1. Ind. Ann. Stat. § 20-304 (repealed) (Burns 1964 Repl.); for present law, see IC 1971, § 22-8-1.1-1 *et seq.*, Ind. Ann. Stat. § 40-1020 to 40-1068 (Burns 1968 Repl.).

2. Burns Administrative Rules and Regulations, §§ 40-2139, L 262 L 269, L 1.

of but one inference and that inference in favor of the defendant, that the court may give a preemptory instruction * * *' " (Emphasis supplied.) *Mamula* v. *Ford Motor Company* (1971), 150 Ind. App. 179 at 181-82, 275 N.E.2d 849 at 851. *See also: Wallace* v. *Doan* (1973), 155 Ind. App. 316, 292 N.E.2d 820; *Hammond* v. *Allegretti* (1972), Ind. App., 288 N.E.2d 197; *Adkins* v. *Elvard* (1973), 155 Ind. App. 672, 294 N.E.2d 160.

So, we may only reverse if after considering the evidence most favorable to Jones, there is some evidence in support of the claimed negligence of Ipalco.

ISSUE ONE.

CONCLUSION—It is our opinion that there was no evidence from which a jury could find that Ipalco retained sufficient control over Combustion's work to render Ipalco vicariously liable for Combustion's negligence (if any) on the basis of respondeat superior.

Jones grapples with the acknowledged principle that a person employing an independent contractor is usually not liable for the torts of that contractor. As such, the independent contractor's liability usually is not transferable to the employer. *Gibbs* v. *Miller* (1972), 152 Ind. App. 326, 283 N.E.2d 592; *Stewart* v. *Huff* (1938), 105 Ind. App. 447, 14 N.E.2d 322.

If the employer retains sufficient right to control the work, the relationship of master-servant may arise.

Indiana courts have been explicit as to the control which will confer the status of independent contractor upon persons hired to do certain work. The oft-cited case of *Prest-O-Lite Company* v. *Skeel* (1914), 182 Ind. 593, 106 N.E. 365, is instructive:

> "It is well settled that where one lets a contract to another to do a particular work, reserving to himself no control over such work except the right to require it to conform to a particular standard when completed, he is not liable for the negligence of the party to whom the contract is let. An independent contractor is one

exercising an independent employment under a contract to do certain work by his own methods, without subjection to the control of his employer except as to the product or result of the work. *When the person employing may prescribe what shall be done, but not how it is to be done, or who is to do it, the person so employed is a contractor and not a servant. The fact that the work is to be done under the direction and to the satisfaction of certain persons representing the employer, does not render the person contracted with to do the work a servant."* (Emphasis supplied.) (182 Ind. at 597, 106 N.E. at 367.) *See also: Gibbs* v. *Miller, supra; Nash* v. *Meguschar* (1950), 228 Ind. 216, 91 N.E.2d 361; *The Vincennes Water Supply Co.* v. *White* (1890), 124 Ind. 376, 24 N.E. 747; *Clark* v. *Hughey* (1954), 233 Ind. 134, 117 N.E.2d 360; *Marion Shoe Co.* v. *Eppley* (1914), 181 Ind. 219, 104 N.E. 65; *Craybill* v. *Livengood* (1967), 142 Ind. App. 624, 231 N.E.2d 854; *Petzold* v. *Mc-Gregor* (1931), 92 Ind. App. 528, 176 N.E. 640.

The court in *Prest-O-Lite* also offered the following warning against an overly-restrictive contractual analysis in the determination of what form of controls the owner-contractee retained:

"The difference between an independent contractor and a mere servant is not to be determined solely by the pretention (sic) of a certain kind or degree of supervision by the employer. *It is to be determined by the contract as a whole,—by its spirit and essence,—and not by the phraseology of the single sentence or paragraph."* (182 Ind. at 598, 106 N.E. at 367).

Whether viewed separately or as a whole, the provisions of the contracts between Ipalco and Combustion are subject to only one reasonable interpretation, i.e., Ipalco retained supervisory control of the work done by Combustion. It controlled what was done but not who did it or how it was done. Combustion's performance was required to measure up to the plans and specifications and to be coordinated with overall construction progress. Nor is there any evidence that Ipalco or its agents possessed any power to control the specific means and details of Combustion's work.

Jones failed to present any evidence that *Decedent* was under the power and control of Ipalco and subject to its orders and directions in operating the hoist at the time he sustained his fatal injuries—a factor recognized as the ultimate test of control in actions of this sort. *Marion Shoe Company* v. *Eppley, supra.*

Having failed to make an evidentiary showing of Ipalco's right to control, the manner and means of Combustion's or Decedent's work, Decedent was nothing more than an employee of an independent contractor. Vicarious liability may not, therefore, be imposed upon Ipalco as a matter of law. *Stewart* v. *Huff, supra.*

ISSUE TWO.

CONCLUSION—It is our opinion that there was no evidence which could sustain Ipalco's liability to Jones on the basis of any exception to the general rule insulating a contractee from responsibility for the death or injury to a servant of an independent contractor.

Engrafted on the general rule that "where an injury has been done by a party exercising an independent employment, the person employing him will not be liable in damages for injury or death resulting from the wrongful acts or omissions of such party, or of the servants of such party," are certain exceptions. They are enumerated in: *Denneau* v. *Indiana and Michigan Electric Company* (1971), 150 Ind. App. 615 at 620, 277 N.E.2d 8 at 12.

> "There are five (5) exceptions to the general rule that a contractee is not liable to an independent contractor's servants for injuries:

  (1) where the contract requires the performance of work intrinsically dangerous;
  (2) where a party is by law or contract charged with the specific duty;
  *(3) where the act will create a nuisance;

---

* Jones makes no attempt to come within exceptions 3 and 5.

(4)  where the act to be performed will probably cause injury to others unless due precaution is taken to avoid harm;

*(5)  where the act to be performed is illegal."

Jones seeks to impose liability on Ipalco by virtue of these exceptions to the general rule immunizing the employer of an independent contractor from responsibility for death or injury to a servant of an independent contractor. So, we consider the exceptions claimed by Jones one by one.

*Exception One.* This exception applies if *"the contract requires* the performance of work intrinsically dangerous." (Emphasis supplied.)  *Denneau* v. *Indiana and Michigan Electric Company, supra; Stewart* v. *Huff, supra.*

The contracts between Combustion and Ipalco provided for the installation of steam generating equipment. They are silent as to the erection of a man and material hoist. So there is no contract provision requiring the performance of intrinsically dangerous work, assuming such a hoist to be intrinsically dangerous.

Had the contracts required Combustion to install a man and materials hoist, such a device is *not* "inherently" or "intrinsically" dangerous within the meaning of that term. Intrinsic or inherent danger possesses a special meaning in the law. It can not be used to describe circumstances and conditions which are not natural, ever-present components of the instrumentality itself, but are merely dangers arising from casual or collateral negligence of others. *Neal* v. *Home Builders, Inc.* (1953), 232 Ind. 160, 111 N.E.2d 280; *Black's Law Dictionary,* P. 921 (West 4th Ed. 1951).

Undisputed evidence indicated the danger attending Decedent's work was not a natural, ever-present one. It was a danger arising from an ice clogged limit switch which caused

---

* Jones makes no attempt to come within exceptions 3 and 5.

the manipulation of override circuitry by Decedent's fellow employees that rendered the hoist car dangerous.

*Exception Two.* Again Jones fails. There is no evidence, or inference therefrom, demonstrating that Ipalco was obligated to Jones under a specific duty imposed by law or contract, the breach of which would subject Ipalco to liability.

Contrary to Jones' argument, Ipalco's duty to provide Jones with a safe place to work did not extend or relate to operation of a hoist which was owned, erected and maintained solely by Jones' employer, an independent contractor, for the exclusive use of the contractor's employees.

The law of this state is that a party in the position of Ipalco is obligated to take necessary steps to prevent injury to an independent contractor's employee only when such injury is reasonably foreseeable in light of the hazardous nature of instrumentalities *maintained by the party on his premises. Denneau* v. *Indiana and Michigan Electric Company, supra; Hoosier Cardinal Corporation* v. *Brizius* (1964), 136 Ind. App. 363, 199 N.E.2d 481. No evidence was presented which could give rise to a reasonable inference that Ipalco ever assumed control over the maintenance or operation of the hoist, or had *superior* knowledge of potential danger involved in its operation by Combustion. Ipalco's sole employee on the premises admittedly had some knowledge that the limit control switch had previously caused the hoist to stick—knowledge that he *shared* with Combustion. Ipalco had no duty to Decedent under these circumstances. *Hoosier Cardinal Corporation* v. *Brizius, supra,* at 374, 199 N.E.2d 481.

There is no specific duty imposed on Ipalco by the Dangerous Occupation Act or Administrative Regulations (cited above).

Cases are legion in this state holding that the Dangerous Occupation Act imposes no statutory duty upon a contractee who is not in charge of the work or instrumentality in ques-

tion. The common law rule exempting the owner from liability for the negligence of an independent contractor is therefore unaffected by this legislation. *Leet* v. *Block* (1914), 182 Ind. 271, 106 N.E. 373; *Switow* v. *McDougal* (1916), 184 Ind. 259, 111 N.E. 3; *Prest-O-Lite Company* v. *Skeel, supra; Kawneer Manufacturing Company* v. *Kalter* (1918), 187 Ind. 99, 118 N.E. 561; *Bedford Stone and Construction Company* v. *Hennigar* (1918), 187 Ind. 716, 121 N.E. 277; *Zainey* v. *Rieman* (1924), 81 Ind. App. 74, 142 N.E. 397.

The Administrative Regulations relied on by Jones were adopted by the Indiana Department of Labor and are assembled under the Department's "Construction Industry Safety Code," *Burns Administrative Rules and Regulations,* §§ 40-2139 L 1 *et seq.* These regulations do specify certain safety devices and procedures in the operation of material hoists. As Jones admits, in order for a "specific duty" to be imposed on Ipalco by these regulations, Ipalco must be classed as a "prime contractor." Section L 1 (6) of the Safety Code covers this subject:

> *"The prime contractor of the project shall be deemed as being responsible for compliance with the provisions of this code.* In the event there is more than one (1) prime contractor on the project, each shall be responsible for compliance of this code within the area of his jurisdiction." (Emphasis supplied.)

A prime contractor is then defined by Section L 1 (8):

> "The term 'prime contractor' shall be interpreted as being the person, firm or corporation *that is responsible to the awarding unit* for direct or indirect completion of all or part of the overall project." (Emphasis supplied.)

This verbiage contemplates the classic arrangement of owner (contractee), a prime or general contractor in overall charge of the project, and subcontractors responsible to the prime contractor. No such arrangement existed in the construction of Ipalco's power plant.

This definition of prime contractor merely recognizes the existence of a legal relationship comprised of *two distinct* entities: (1) the Contractor, *i.e.,* one who undertakes to perform certain work *for another,* and (2) the Contractee, *i.e.,* the "awarding unit" or person for whom such work is performed. *See,* 9 *Words and Phrases* 576 *et seq.,* and cases thereunder.

Ipalco's exclusive place in this relationship was that of "Contractee," not "Contractor." No duty was placed upon it by operation of a regulation which was addressed to prime "Contractors."

This distinction is not only a fair interpretation of the words of the prime contractor definition section, but is consistent with the statute which authorizes these regulations. It reads in part as follows:

"* * * the commissioner of labor is hereby authorized * * * (a) To * * * adopt rules * * *, *applicable to either employers or employees,* or both * * *." (Emphasis supplied.) IC 1971, § 22-1-1-11, Ind. Ann. Stat. § 40-2140 (Burns 1965 Repl.). (40-2140 herein.)

This statute, 40-2140, limits the application of rules and regulations to "employers" or "employees." Ipalco was not an employer of Decedent and the prime contractor definition section cannot magically transform Ipalco into an "employer" by an interpretation that would ignore a contractee-owner's status as an awarding unit. Differently stated, a narrow interpretation of the prime contractor definition sections of the regulations is consistent with the limits of the regulations issued under the enabling statute (40-2140).

In reaching this conclusion we have interpreted the words "employer" and "employee" in their ordinary and usual meaning.

Furthermore, to reach a different conclusion would permit a major departure from the common law rule insulating a contractee from liability to an employee of an independent

contractor. *Stewart* v. *Huff, supra*. A statute must, if possible, be strictly construed to prevent such a derogation from that settled doctrine. *See, Chicago and Erie Railroad Co.* v. *Luddington* (1910), 175 Ind. 35, 91 N.E. 939.

Therefore, as with the Dangerous Occupation Act, the doctrine which protects Ipalco from liability is unaffected by these regulations in the Safety Code.

Jones also relies on the contract itself to charge Ipalco with a *specific* duty to see that adequate precautions were taken to operate the hoist. There are no such provisions. There are contractual references to safety requiring *Combustion* to conduct its operations in a safe manner. Because Ipalco and its engineer, Stone and Webster, had the *power* to prescribe safety regulations under the contract did not give rise to a specific *duty* to do so.

*Exception Four.* Jones cannot impose liability on Ipalco on the basis that the act to be performed would probably cause injury to others unless due precaution was taken to avoid harm.

As Judge Staton observed in *Denneau:*

> "*Foreseeability* is an essential element in exceptions one and four." (Our emphasis.) *Denneau* v. *Indiana & Michigan Electric Co., supra* at 12.

And further:

> "The nature of the performance of the work assigned to the servant which has caused the injury must be foreseeable by the contractee *at the time of making the contract.* (Our emphasis.) Scott Construction Co. v. Cobb (1928), 86 Ind. App. 699, 707, 159 N.E. 763; See also 23 A. L. R. 1016." *Denneau* v. *Indiana & Michigan Electric Co., supra* at 12.

There was no evidence that, at the time Ipalco contracted with Combustion, Ipalco could foresee or should have foreseen that the limit control switch atop a man and materials hoist operated by an independent contractor for exclusive use of its employees would become clogged with ice and snow causing

the hoist to stick—and that employees of such independent contractor would undertake to manipulate the hoist circuitry so as to cause death or injury. Such harm was not foreseeable "at the time of making the contract."

The policy underlying the foreseeability exception is aptly summarized in 41 Am. Jur. 2d *Independent Contractors* § 35:

"It is apparent that virtual abrogation of the general doctrine of an employer's nonliability for acts of an independent contractor or the latter's servants would result if the law were to predicate, under all circumstances, the existence of an absolute duty on the employer's part to guard against all accidents, probable as well as improbable, that might happen, to the damage of third persons, while stipulated work is being performed by an independent contractor. If, therefore, recovery is sought on the ground that an employer should have adopted certain precautionary measures for the purpose of preventing the injury complained of, *the action must fail unless the plaintiff can at least show that in view of the nature of the work and the conditions under which it was to be executed, the defendant should have foreseen that the actual catastrophe which occurred was likely to happen* if those precautionary measures were omitted." (Emphasis supplied.)

There is an absence of evidence or legitimate inferences from evidence submitted which could support Jones' claim against Ipalco. Therefore, the judgment on the evidence entered by the trial court must be and is affirmed.

Sullivan and White, JJ., concur.

NOTE.—Reported at 304 N.E.2d 337.