Lowell C. SMITH and Doris I. Smith, Appellants (Plaintiffs Below),

v.

P. & B. CORPORATION, Robert C. Osborne, Paul J. Falkenstein, Mary G. Osborne, O. Paul Falkenstein, Oak Park Conservancy District, William Arnett, Harry Sandbach, and Wayne Storz, as successors to William C. Cundiff, Harry Sandbach and Donald Vascimini, all as Directors of the Oak Park Conservancy District; William E. Henderson and Paul E. Moffett, Appellees (Defendants Below).

No. 1–778A192.

Court of Appeals of Indiana, First District.

March 26, 1979.

Rehearing Denied April 30, 1979.

---

1. *I. e.*, "deadly force." The instruction before us is misleading due to its confusion of these propositions.

David V. Scott, Kelso & Scott, Rebecca G. Looney, New Albany, for appellants.

John Vissing, Fox & Smith, Jeffersonville, David P. Varble, Varble & Varble, Jeffersonville, Virgil E. Bolly, Sellersburg, for appellees.

ROBERTSON, Judge.

Plaintiffs-appellants, Lowell C. Smith and Doris I. Smith (the Smiths), bring this appeal from a summary judgment granted to defendants-appellees, P. & B. Corporation and its shareholders (P & B), and Oak Park Conservancy District and its directors (Oak Park). The Smiths contend there is a genuine issue of material fact concerning the liability of appellees for injury suffered by Smith in a sewer line construction accident.

We affirm.

Ind. Rules of Procedure, Trial Rule 56(C) provides that summary judgment shall be rendered

. . . if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Upon review of a grant of summary judgment, this court must determine if there is any genuine issue of material fact and whether the law was correctly applied. *Hale v. Peabody Coal Co.*, (1976) Ind.App., 343 N.E.2d 316. The burden is upon the moving party to establish that no material facts are in genuine issue, and all doubts and fair inferences are to be resolved in favor of the opponent of summary judgment. *Bassett v. Glock*, (1977) Ind.App., 368 N.E.2d 18. The products of discovery shall be liberally construed in the non-moving parties' favor. *Podgorny v. Great Central Insurance Co.*, (1974) 160 Ind.App. 244, 311 N.E.2d 640. Failure of the non-moving party to oppose the motion by counteraffidavits does not entitle movant to summary judgment; the moving party must still demonstrate that summary judgment is appropriate. *Levy Co., Inc. v. State Bd. of Tax Commissioners*, (1977) Ind.App., 365 N.E.2d 796. Finally, even if the facts are

not in dispute, summary judgment is not appropriate when the information before the court reveals a good faith dispute as to the inferences to be drawn from those facts. *Matter of Big Raccoon Conservancy District,* (1977) Ind.App., 363 N.E.2d 1004; *Hale v. Peabody Coal Co., supra.*

The facts most favorable to the Smiths are that on March 28, 1972, Lowell C. Smith was working for one William Henderson as a laborer constructing a sewer line in Meadow Downs Subdivision in Clark County. The project involved the digging of a trench approximately eight feet deep in which the sewer pipe was laid. Smith was working in the trench clearing loose dirt left by a backhoe when the trench collapsed, injuring Smith. No shoring or bracing was used to support the trench.

The sewer line was being constructed for P & B, a closely-held corporation, on the basis of an oral contract between P & B and Henderson. Henderson won the contract by submitting the lowest bid of $2 per foot. The sewer pipe was being laid as part of a plan by P & B to develop the subdivision to the stage where it could be sold to builders for residence construction. P & B employed an engineer, Paul Moffett, to prepare plans for the sewer system which were to be submitted to the Oak Park Conservancy District for approval in order that the subdivision sewer system could be hooked up to the Oak Park system. The plans were prepared and tentatively approved by Oak Park, and construction was in progress when the injury occurred. Eventually, Oak Park would inspect and accept the subdivision system as part of its own.

P & B supplied the pipes and tiles necessary for the sewer project to Henderson, but supplied no tools. An officer of P & B was at the project site from time to time to see if more materials were needed, but there is no evidence that he directed or controlled Smith at any time. Moffett also was on the project staking out the line for the trench and observing construction to

ensure that the project met the specifications required by Oak Park.

The Smiths brought suit against Henderson, Moffett, P & B and Oak Park. The employer, Henderson, was dismissed pursuant to TR. 12(B)(6) and no appeal was taken from that ruling. Following the filing of answers and discovery, P & B and Oak Park moved for and were granted summary judgment.

The issues presented for review revolve around whether the doctrine of *respondeat superior* applies against P & B and Oak Park. If Henderson was an independent contractor, the Smiths question whether one of the exceptions to the rule of nonliability for the acts of an independent contractor applies against P & B or whether there was direct negligence by P & B (as a landowner) to Smith (as a business invitee). With respect to Oak Park, there is a further issue questioning liability for the issuance of a license permitting performance of alleged intrinsically dangerous work.[1]

The Smiths first contend that there was a genuine issue of material fact as to whether the relationship between P & B and Henderson was that of master-servant or rather contractee-independent contractor.

If an employer retains sufficient right to control the work, the relationship of master-servant arises to render the employer vicariously liable for the negligence of the servant under the doctrine of *respondeat superior. Hale v. Peabody Coal Co.,* 343 N.E.2d at 320. However, as a general rule, the employer of an independent contractor is not liable for the torts of that contractor. *Id.* at 320–21 (citations omitted).

In the oft-cited decision, *Prest–O–Lite Co. v. Skeel,* (1914) 182 Ind. 593, 106 N.E. 365, the determinative factor of control is discussed:

> It is well settled that where one lets a contract to another to do a particular work, reserving to himself no control over

---

1. Because of our disposition of the case, we need not discuss the issues of any contributory negligence and incurred risk by Lowell Smith.

such work, except the right to require it to conform to a particular standard when completed, he is not liable for the negligence of the party to whom the contract is let. An independent contractor is one exercising an independent employment under a contract to do certain work by his own methods, without subjection to the control of his employer, except as to the product or result of the work. When the person employing may prescribe what shall be done, but not how it is to be done, or who is to do it, the person so employed is a contractor, and not a servant. The fact that the work is to be done under the direction and to the satisfaction of certain persons representing the employer does not render the person contracted with to do the work a servant. [Citations omitted.]

182 Ind. at 597, 106 N.E. at 367.

And in *Cummings v. Hoosier Marine Properties, Inc.,* (1977) Ind.App., 363 N.E.2d 1266, 1272, the court stated:

If control is said to be operative when the right of some supervision is retained, it must be more than a general right which is usually reserved to all those who employ the labors of another. *See,* 2 Restatement of Torts 2d, § 414, at 387, Comments (1965). The control must be such as would enable the landowner to oversee the method of work employed. It must be a control which would under the common-law have given rise to the doctrine of *respondeat superior.* . . .

Thus if an owner gives directions for the work, furnishes equipment for it, or retains control over any part of it, he is required to exercise reasonable care for the protection of others. But the right to control one's subcontractor must have sufficient practical effect that an imposition of vicarious liability will encourage a form of supervision which will promote accident prevention. Absent the prophylactic purposes supporting liability under *respondeat superior,* the attachment of liability under the rubric of control becomes solely remedial and compensatory; a result in this case which would be confined to workmen's compensation.

The Smiths point to several factors which they contend create a factual dispute as to control. The first two are that P & B supplied the materials for the work and that an officer and major shareholder of P & B was frequently present at the job site to check on the materials needed. In *Marion Shoe Co. v. Eppley,* (1914) 181 Ind. 219, 104 N.E. 65, the president of the owner company was constantly on the building site, but the court did not find that determinative of the control question. Further, the owner company was supplying the building materials and the court stated:

. . . the fact that appellant furnished the brick and other building material is not controlling here in absence of a showing that the accident resulted from a defect in such material.

181 Ind. at 224, 104 N.E. at 66.

There is no evidence here that the pipe supplied by P & B in any way contributed to the injury suffered by Smith, and there is no evidence that the officer ever directed Smith in his activities.

As another indicium of control, the Smiths observe that Paul Moffett, as engineer and alleged agent of P & B drew up the plans, exercised a right of approval and staked the path for the sewers. *Presto–O–Lite* directly answers this argument:

Where the arrangement is that some person, representing the owner or architect, is simply to give directions as to the work to be done, and is not to give, or has no authority to give, directions as to the manner in which it should be performing it, then the owner would not be liable for injury resulting from the method of its performance, as there would be no relation of master and servant.

182 Ind. at 596–7, 106 N.E. at 367.

We do not think that Moffett's activities were signs of control of the *manner* or *means* of performing the job—such were left to Henderson.

The final factor Smith urges as evincing control by P & B is P & B's responsibility to Oak Park District for the sewer system until it was completed and accepted by Oak

Park. This is a proposition with which we began the analysis, and we can only say that ownership of itself is not indicative of control over those engaged to perform a certain act.

There is no genuine issue of material fact as to whether a master-servant relationship existed in this case.

■ The Smiths next argue that even if Henderson was an independent contractor, an issue of fact exists as to whether P & B is liable under one or more of the exceptions to the rule of nonliability of contractees for injuries to the servants of independent contractors.

Of the five exceptions recognized under Indiana law,[2] three are raised by the Smiths as presenting factual issues:

(1) where the contract requires the performance of work intrinsically dangerous;

(2) where a party is by law or contract charged with the specific duty; and

(3) where the act to be performed will probably cause injury to others unless due precaution is taken to avoid the harm.

■ These issues were raised in the similar case of *Cummings v. Hoosier Marine Properties, Inc.*, (1977) Ind.App., 363 N.E.2d 1266, a wrongful death action brought against a developer and a sewer subcontractor when an employee was killed in a trench cave-in. The trench in that case was 18 feet deep. The court there held in regard to the inherently dangerous exception:

> However inherently dangerous means that the danger exists in the doing of the activity regardless of the method used. It is a risk intrinsic to the accomplishment of the task and not simply a danger arising from a casual or collateral negligence of others. *Neal, Admr. v. Home Builders, Inc.*, (1953) 232 Ind. 160, 111

N.E.2d 280. Thus liability under the inherently dangerous exception is imposed on a rationale sounding in strict liability as would exist for example in blasting.

> In this context the mere excavation of sewer trenches cannot be considered intrinsically dangerous. Properly done the work is relatively safe.

363 N.E.2d at 1275.

■ The second exception claimed by the Smiths is that under Burns Administrative Rules and Regulations, §§ (40-2139)-L1 C (6), (7), and (8),[3] a specific duty in regard to trenching procedures is placed on P & B. These regulations apply only to prime contractors, and it is clear under the definition of this term that they do not apply to P & B. *Cummings*, 363 N.E.2d at 1276-7; *Jones, Admx. v. IPALCO et al.*, (1974) 158 Ind.App. 676, 304 N.E.2d 337.

The third exception claimed is when the act to be performed will probably cause injury to others unless precaution is taken to avoid the harm. It was stated in *Cummings*, 363 N.E.2d at 1275:

> Within these confines an action would fail absent a showing by the plaintiff that in view of the nature of the work and the conditions under which it was to be executed, the defendant should have foreseen that the actual catastrophe which occurred was likely to happen if those precautionary measures were omitted. *Jones, Admx. v. IPALCO et al.*, *supra*; *Denneau v. Ind. & Mich. Elect. Co.*, (1971), 150 Ind.App. 615, 277 N.E.2d 8 (transfer denied).

And further, *Id.*, at 1276.

> Unless it further appears from the evidence that Hoosier Marine owed a duty to appellants to inspect and test the shoring and bracing and to direct the manner of excavation, no liability could attach. *Mackey v. Lafayette, etc., Trust Co.*, (1919), 70 Ind.App. 59, 121 N.E. 682.

---

**2.** The exceptions were originally enumerated in *Scott Constr. Co. v. Cobb*, (1928) 86 Ind.App. 699, 159 N.E. 763; *see also Stewart v. Huff*, (1938) 105 Ind.App. 447, 14 N.E.2d 322. The other two exceptions, not raised here, are: (1) where the act will create a nuisance, and (2)

where the act to be performed is illegal. *Denneau v. Indiana and Michigan Electric Company*, (1971) 150 Ind.App. 615, 620, 277 N.E.2d 8, 12.

**3.** (22-1-1-10)-L1 C (6), (7), and (8).

The owner is held liable only for those injuries resulting directly from the nature of the work which might have been within the contemplation of the parties and no recovery is allowed for an injury resulting from the wrongful act entirely of the independent contractors' doing. *Naylor v. Holland, etc., Sugar Co.*, (1921), 75 Ind.App. 132, 130 N.E. 152. [Citations omitted.]

Although one of the shareholders of the corporation was on the site, we cannot thereby conclude that he knew shoring and bracing was a necessary precaution to prevent injury. There is no evidence that he was aware of any facet of trenching.

The Smiths next contend that the P & B defendants were negligent in their own right by violating duties they owed as landowners to invitees. Again, this specific issue was addressed in *Cummings*:

Further, contrary to appellants' argument, Hoosier Marine's duty to provide a safe working habitat did not extend to Woodruff's manner of digging trenches. Appellee's only legal obligation was to exercise ordinary care that its premises were in a reasonably safe condition for work purposes. *Hoosier Cardinal Corp. v. Brizius, supra* [136 Ind.App. 363, 199 N.E.2d 481].

363 N.E.2d at 1273–4.

Having found no issue of material fact with respect to P & B and/or its shareholders, we turn to the issues regarding the summary judgment granted Oak Park Conservancy District. Two issues are raised.

The first issue is whether Oak Park by issuing a tentative permit to P & B to build a sewer line for eventual attachment to the Oak Park system is vicariously liable. The Smiths recite as a general rule "that a municipality or similar entity, which requires a license or permit as a prerequisite to the doing of an act which may be done, so as not create a nuisance or involve injury to persons, is not liable if the licensee so wrongfully or negligently does the licensed

act that injury results[4]," citing 57 Am. Jur.2d *Municipal, Etc., Tort Liability* § 4 (1971); *see Wheeler v. Plymouth*, (1888) 116 Ind. 158, 18 N.E. 532; *Schnurr v. Board of Com'rs of Huntington County*, (1899) 22 Ind.App. 188, 53 N.E. 425. However, the Smiths note that there is an exception to this general rule for the licensing of dangerous acts. 21 I.L.E. *Municipal Corporations* § 411 (1959); *Moore v. City of Bloomington*, (1911) 51 Ind.App. 145, 95 N.E. 374. We have already determined that trench excavation is not intrinsically dangerous and thus need not discuss this exception further.

The Smiths' second contention with regard to Oak Park is that Oak Park maintained such control over the sewer project as to make it liable for the negligence of Henderson.

We do not think that the principle of *respondeat superior* can apply between Oak Park and Henderson. There was no employee-employer relationship and there was also no contractual relationship between the two. The Smiths argue that Oak Park had effective control over Henderson insofar as Oak Park had the authority to grant approval for the project to proceed, to specify the type of pipe used and the manner of joining them, to approve the plan for the system which had to comply with Oak Park requirements, to approve the person who was to perform the work, and to inspect the construction of the system.

To reiterate, control is the essence of the *respondeat superior* doctrine, and the relationship between Oak Park and Henderson was not even that of contracting parties. It is true that Oak Park had authority to dictate the specifications for the job and may have even checked at the site to ensure that these specifications were being met. It is also true that Oak Park would very possibly at some future time take over the system as its own. But these facts alone do not create a *respondeat superior* relationship. Most notably, Oak Park could not

---

4. The Smiths do not discuss the applicability of the Indiana Tort Claims Act, *Ind.Code* 34–4– 16.5–1, *et seq.*, apparently under which Oak Park is included. *See Ind.Code* 34–4–16.5–2(7).

even select or choose the contractor to do the job.[5] It has been said:

> Where there is no right of selecting or choosing, the relation of principal and agent does not exist, and, where the relation of principal and agent does not exist, the maxim *respondeat superior* cannot apply. It is therefore logically inconceivable that a municipal corporation which is itself free from fault should be held responsible for the negligence of a person not voluntarily chosen by it to perform an act.

*Dooley v. Town of Sullivan,* (1877) 112 Ind. 451, 14 N.E. 566.

We do not think that the specifications and approval rights of Oak Park can be transformed into a control of the manner and means of construction, especially where there is no employee or contractual relationship between Oak Park and Henderson.

There was *no error in granting summary judgment for Oak Park or P & B.* Judgment affirmed.

LYBROOK, P. J., and LOWDERMILK, J., concur.

---

**5.** The only evidence in the record concerning Oak Park's "right to approve" the contractor is found in the deposition of one of P & B's officers:

"Q. 2. You said the Conservancy District approved him—
A. (Interrupting) We told the County and the Conservancy District that this man was the lowest bidder on the job, and would the County let him work on their street and would Oak Park Conservancy accept his performance and they said his record is okay; let him do it."

There is no other evidence of any statutory, contracted or other right of Oak Park to designate the contractor.