**Vissarion KATAPODIS and Koula Katapodis, Plaintiffs-Appellees,**

v.

**KOPPERS COMPANY, INC., Defendant-Appellant.**

**No. 84–1885.**

United States Court of Appeals, Seventh Circuit.

Argued May 20, 1985.

Decided Aug. 14, 1985.

Saul I. Ruman, Saul I. Ruman & Associates, Hammond, Ind., for plaintiffs-appellees.

Robin D. Pierce, Spangler, Jennings, Spanger & Dougherty, Merrillville, Ind., for defendant-appellant.

Before BAUER and EASTERBROOK, Circuit Judges, and CAMPBELL, Senior District Judge.*

BAUER, Circuit Judge.

The defendant, Koppers Co., Inc., appeals a jury verdict awarding plaintiffs Vis-

---

* Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, is sitting by designation.

sarion and Koula Katapodis damages for an injury suffered by Vissarion Katapodis while he was working on a construction project for which defendant was the general contractor. Defendant claims that it is not liable to plaintiffs because Vissarion Katapodis was employed by a subcontractor and was therefore not in an employer-employee relationship with defendant. Defendant also cites errors concerning the jury instructions, the admission of certain evidence, and allegedly improper statements made by plaintiff's counsel during closing argument. We affirm the judgment.

I

The facts in this case are quite lengthy, but may be greatly condensed for the purposes of this appeal to an outline of the various employment relationships existing at the construction project where plaintiff was injured. The project involved the construction of a blast furnace for Inland Steel Company on its property in East Chicago, Indiana. Defendant Koppers Company, Inc. (the Company), was hired by Inland Steel as the general (or prime) contractor for the project. Koppers hired several subcontractors to complete the project, among them Avalotis Painting Company, which employed plaintiff as a painter.

During the course of the project, plaintiff was engaged to sandblast and paint a pipe connecting a stove at the blast furnace with another pipe called a "coal blast main header." The pipe was surrounded by "pipe and clamp" scaffolding rising some 125 feet from the ground. The scaffolding had been erected by another subcontractor, M & O Insulation Company, which had been hired to install insulation in the pipe. Plaintiff had been using the scaffolding erected by M & O while he painted the pipe and was injured when he stepped onto some boards which were not fastened to the scaffolding and fell approximately 35 feet.

Plaintiff sued the Company for his personal injuries and his wife sued for loss of consortium on a negligence theory. After a jury trial, plaintiff was awarded $300,000 and his wife was awarded $10,000. The Company now appeals, arguing that the trial judge improperly instructed the jury that it could find the Company liable under Indiana's Construction Industry Safety Code. The Company also alleges that this jury instruction conflicted with further instructions given to the jury, that the amount of the contract between Inland Steel and the Company was improperly admitted into evidence, and that plaintiff's counsel made improper statements during closing argument referring to the disparity between the financial worth of the Company and plaintiff.

II

The Company first argues that jury instruction fifteen was improper. This instruction stated, in relevant part, that:

As a prime contractor under the Indiana [Construction] Industry Safety Code the Koppers Company, Inc. had a legal duty to ensure that there was compliance with the provisions of the Code on the project at Inland Steel.... The Koppers Company, Inc. could not avoid that duty by delegating responsibility to its subcontractor, M & O Insulation, Inc. You are instructed that if you find from a preponderance of the evidence that M & O Insulation, Inc., by its employees, violated these regulations, then Koppers Company, Inc. is jointly responsible for M & O Insulation, Inc.'s failure to comply with the Code.

If you find that the Koppers Company, Inc. failed to see that these code provisions on scaffolding were complied with then the Koppers Company, Inc. was guilty of negligence unless you further find that there were circumstances resulting from factors beyond the Koppers Company, Inc.'s control that made it impossible for the Koppers Company, Inc. to comply with these regulations.

The Company contends that this instruction misstates the law, arguing that absent the existence of a master-servant or employer-employee relationship between the Compa-

ny and plaintiff, the provisions of Indiana's Construction Industry Safety Code are inapplicable and cannot be used to impose liability on the Company. The unambiguous language of the Safety Code and several cases interpreting the Code, however, support the propriety of the instruction.

In *Jones v. Indianapolis Power & Light Co. (Ipalco)*, 158 Ind.App. 676, 304 N.E.2d 337 (1973), the Court of Appeals of Indiana for the Second District held that an owner-contractee (Ipalco) was not liable under the Code for an injury to the employee of an independent contractor. Ipalco had contracted directly with several contractors to engage in the construction of a power plant on its property. One of these contractors, Combustion Engineering, Inc., was hired to supply and install steam generating equipment. During the course of the construction, Jones, an employee of Combustion, was killed while operating a hoist maintained and used exclusively by Combustion.

In addressing Ipalco's liability to Jones' estate, the court stated that Ipalco would have to have been a "prime contractor" in order to be liable to Jones under the Code, in accordance with Section 5-1-1(6) of the Code.[1] The court then noted that the Code defined a prime contractor as one who "is responsible to the awarding unit for direct or indirect completion of all or part of ... the project." 304 N.E.2d at 345 (quoting 610 Ind.Admin.Code 5-1-1(8)). In view of this definition, the court stated that the Code "contemplates the classic arrangement of owner (contractee), a prime or general contractor in overall charge of the project, and subcontractors responsible to the prime contractor." *Id.* The court further noted that this definition distinguished between contractors, who perform work for another, and the contractee, the "awarding unit" for whom the work is performed. *Id.* The court thus held that because Ipalco's exclusive role in the project was as a contractee, "[n]o duty was

placed upon it by operation of a regulation which was addressed to prime [contractors]." *Id.* Accord *Smith v. P & B Corp.*, 179 Ind.App. 693, 386 N.E.2d 1232, 1237 (1979); *Cummings v. Hoosier Marine Properties, Inc.*, 173 Ind.App. 372, 363 N.E.2d 1266, 1276-77 (1977).

In *Jones v. City of Logansport*, — Ind. App. —, 436 N.E.2d 1138 (1983), the Court of Appeals of Indiana for the Third District held that Sections 5-1-1(6), (7), and (8) of the Code "impose a specific duty upon prime contractors to insure that the safety regulations of the Commissioner of Labor are followed." 436 N.E.2d at 1147 (citing *Smith v. P & B Corp.*, 386 N.E.2d at 1237). In that case, the City of Logansport hired Zimpro, Inc. as a prime contractor to oversee part of the construction of a waste treatment plant for the city. Zimpro, in turn, hired Grunau Co., Inc., to perform plumbing work on the project. Jones, an employee of Grunau, was injured on the job and was permitted to recover against Zimpro because, as prime contractor, Zimpro had a non-delegable duty under the Code to provide Jones with a safe place to work and was jointly responsible with the subcontractor to comply with the safety regulations. 436 N.E.2d at 1147.

The case at bar involves nearly the identical scenario which the court addressed in *Logansport* and which the court in *Ipalco* stated was the "classic" arrangement contemplated by the Code. Inland Steel (the owner and contractee) hired Koppers Company as a general contractor to oversee the construction of a blast furnace. Koppers, in turn, hired several subcontractors, one of which was Avalotis Painting Co. Katapodis, an employee of Avalotis, was injured while working on the project. Thus, as a prime contractor, the Company was potentially liable to plaintiff under the Code. The instruction at issue in this case is also nearly identical to the instruction which the

---

1. The Code states:
 The prime contractor of a project shall be deemed as being responsible for compliance with the provisions of this Code. In the event there is more than one prime contractor on a project, each shall be responsible for compliance of this Code [610 IAC 5-1] within the area of his jurisdiction.
 610 Ind.Admin.Code § 5-1-1(6).

appeals court in *Logansport* held properly stated the law. *See* 436 N.E.2d at 1146–47. Therefore, the district court properly instructed the jury as to Koppers' liability under the Code.

The Company cites *Hale v. Peabody Coal Co.*, 168 Ind.App. 336, 343 N.E.2d 316 (1976), as support for its argument that the holding in *Logansport* was incorrect and that it cannot be held liable under the Code because it was not Katapodis's direct employer. *Hale* involved a scenario similar to both *Logansport* and this case. Peabody Coal Co., the owner of a coal mine and the contractee, hired Powered as general contractor to oversee the construction of certain coal handling facilities at Peabody's mine. Powered, in turn, hired Langley-Morgan as a subcontractor to construct a conveyor belt system at the mine. Hale, an employee of Langley-Morgan, was injured during the project. The court, however, held that Powered was not liable to Hale under the Safety Code because Powered was not Hale's employer. 343 N.E.2d at 323.

In reaching this holding, the *Hale* court purportedly relied on *Ipalco*, which it stated held that the Code "do[es] not apply beyond the basic employer-employee relationship and does not affect the common law rule exempting the contractee from liability to the employees of an independent contractor." 343 N.E.2d 323. We believe that the language of the Code and the other Indiana cases, including *Ipalco*, which interpret it show that both parts of this statement are incorrect.

First, it is clear that the Code does apply beyond "the basic employer-employee relationship." Section 5–1–1(6) of the Code states that "[t]he prime contractor of a project shall be deemed as being responsible for compliance with the provisions of this Code." 610 Ind.Admin. Code § 5–1–1(6). Section 5–1–1(7) of the Code further states that

> [i]n the event the prime contractor sublets all or part of the prime contract, the sub-contractors shall be jointly responsible with the prime contractor for com-

pliance with this Code within the area of the subcontractors [sic] jurisdiction.

610 Ind.Admin.Code § 5–1–1(7). Accordingly, *Logansport* held that the prime contractor is liable under the Code to an employee injured as a result of a Code violation even if that employee is not directly employed by the prime contractor. 436 N.E.2d at 1147–48.

In reaching its conclusion that Powered was not liable under the Code to the injured employee because that employee was working for a subcontractor, the *Hale* court relied on the language of the statute authorizing the Code, which states that the labor commissioner may adopt rules "applicable to either employers or employees." Ind.Code § 22–1–1–11. The *Hale* court, citing *Ipalco* as support, construed this language to mean that a direct employment relationship must exist for an employer to be held liable under the Code for the injury of an employee. 343 N.E.2d at 323. This construction ignores the language of Sections 5–1–1(6) and (7) of the Code. Nowhere in its opinion does the *Hale* court address these provisions. Moreover, the *Hale* court's construction misapplies the *Ipalco* court's discussion of the authorizing statute. *Ipalco* merely stated that excluding the owner-contractee from liability as a prime contractor was consistent with the authorizing statute's language limiting application of the Code's regulations to employers. 304 N.E.2d at 345. *Ipalco* stated that to hold that an owner-contractee was an "employer" would ignore its "status as an awarding unit." *Id. Ipalco* did not hold, however, that a prime contractor was not an "employer" within the meaning of Section 22–1–1–11, or that a prime contractor was not liable under the Code for injuries to a subcontractor's employee. Its entire discussion is to the contrary.

Second, it is well-settled under Indiana law that in general a contractee is not liable to a subcontractor's employees. *See Stewart v. Huff*, 105 Ind.App. 447, 14 N.E.2d 322 (1938). However, a number of exceptions to this general rule are also well-established, one of which is that the

rule does not apply "where a party is by law ... charged with the specific duty." *Denneau v. Indiana & Michigan Elec. Co.*, 150 Ind.App. 615, 277 N.E.2d 8, 12 (1971). The Code thus provides an exception to the general rule in the case of prime contractors. *Logansport*, 436 N.E.2d at 1147; *Ipalco*, 304 N.E.2d at 345.

■ Specifically, where a party's sole status in the employment relationship is that of contractee, that party is not liable under the Code, which imposes a duty in derogation of the general rule only on prime contractors. *Smith v. P & B Corp.*, 386 N.E.2d at 1237; *Cummings v. Hoosier Marine*, 363 N.E.2d at 1276–77; *Ipalco*, 304 N.E.2d at 345. Where a party is a contractor to the owner or "awarding unit," however, and has also assumed the role of prime contractor according to the definition under the Code, that party may be held liable under the Code for injuries to a subcontractor's employees. *Logansport*, 436 N.E.2d at 1147. The *Hale* court simply applied the general rule to Powered without even mentioning Powered's potential liability as a prime contractor under the Code's provisions. Moreover, its decision appears to be based in part on a mistaken interpretation of *Ipalco*. We therefore do not find the Company's reliance on *Hale* persuasive.

### III

■ The Company has submitted a Circuit Rule 13 motion for certification to the Indiana Supreme Court of the issues of whether the provisions of the Code are within the Indiana Commissioner of Labor's rule-making authority and whether liability may attach to a party outside the direct employer-employee relationship. The Company states that these issues have not been addressed by the Indiana Supreme Court and that "considerable confusion exists with respect to [these issues] among the decisions of the Indiana Court of Appeals."

It is true that the Indiana Supreme Court has not ruled directly on these issues. However, the Indiana Supreme Court did

decline to hear *Logansport* by denying transfer on December 10, 1982. Moreover, we believe that, with the exception of *Hale*, the Indiana Court of Appeals has consistently affirmed the validity of the Code and a prime contractor's liability outside a direct employer-employee relationship under the Code. The existence of one errant decision does not warrant the additional delay and expense to the parties concomitant with certification to the Indiana Supreme Court. We therefore deny the motion.

### IV

■ Defendant's remaining arguments are without merit. First, defendant argues that jury instruction fifteen conflicted with jury instructions fourteen and sixteen and misled the jury. This is clearly not the case. Ironically, instruction fourteen was favorable to the defendant in that it instructed the jury that defendant was "not under a duty to make certain that precautions are taken to avoid all probable harm to employees." Defendant was under a duty, however, to ensure that the provisions of the Code were followed, as stated in instruction fifteen. Instruction fourteen merely emphasized that defendant was not required to take precautions beyond those required by the Code or by reasonable prudence. We fail to see how this was confusing or improper.

Similarly, instruction sixteen merely instructed the jury as to an alternative ground for liability. That instruction stated that the Company could be liable if it assumed a duty to supervise safety on the project and failed to discharge that duty in a reasonable manner. This ground for liability is separate and independent from liability under the Code, and was therefore not in conflict with instruction fifteen. *See Cummings v. Hoosier Marine*, 363 N.E.2d at 1273 (plaintiff argued that defendant was liable because it exercized supervision over the construction site).

Second, the Company claims that the trial judge committed reversible error by admitting into evidence the amount of the contract between the Company and Inland

Steel. The Company argues that this evidence was completely lacking in probative value and that plaintiff's sole purpose in offering it was to prejudice the jury by highlighting the financial disparity between the Company and the plaintiff. In response to the Company's objection, plaintiff stated that the contract amount was relevant to the reasonableness of the Company's expenditures for safety measures. The trial judge overruled the Company's objection.

 A trial court's evidentiary rulings will not be reversed on appeal absent a clear showing of abuse of discretion. *United States v. Cannon*, 715 F.2d 1228, 1232 (7th Cir.1983). In a claim for negligence, a plaintiff may recover if he shows that the defendant did not exercise such care as an ordinarily prudent person would exercise under the same circumstances. *Central Transport, Inc. v. Great Dane Trailers*, Ind.App., 423 N.E.2d 675, 678 (1981). We believe that the size of the contract and the project are relevant considerations in evaluating whether the Company exercised reasonable care by hiring two safety supervisors for the project. Therefore, the trial judge did not abuse his discretion by admitting the contract amount into evidence.

 Finally, the Company contends that it was denied a fair trial by statements made by plaintiff's counsel during closing argument. The statements which the Company challenges all refer to the amount of the contract between the Company and Inland Steel, except for one reference to the Company's counsel which stated that "[h]e represents Koppers and has a responsibility plus a financial interest to do the best job he can for them." We first note that the Company objected only to the statement referring to Company's counsel. In the absence of a contemporaneous objection, a party may not complain on appeal about statements made during closing argument at trial unless such statements resulted in "fundamental error." *Gonzalez v. Volvo of America Corp.*, 752 F.2d 295, 298 (7th Cir.1985). Because of the relevance of the contract amount to a finding of negligence discussed above, we do not find that plaintiff's references to the contract amount in closing argument resulted in fundamental error. Moreover, the statements referring to the amount of the contract were directed toward the Company's failure to provide adequate safety measures, and were not offered as a comparison of the Company's wealth with that of the plaintiff. Finally, as in *Gonzales*, the defendant does not argue that the jury's verdict was excessive, thus "implicitly conceding that the jury was uninfluenced by extraneous concerns." 752 F.2d at 298. Therefore we do not find that the trial court's failure to restrict these statements was error.

As for the statement referring to the Company's counsel, we fail to see how it prejudiced the jury. The statement was apparently made in response to argument by the Company's counsel concerning proper safety precautions on the project, and was intended to disparage his credibility by reminding the jury of his bias toward the Company as its attorney. The statement was made in pointing out that the Company had not called any safety experts or other more disinterested persons as witnesses, but relied instead on counsel's argument. The fact that counsel was being paid by his client could not have been a surprise to the jury and we can find no authority which holds that reference to that fact is prejudicial error.

For the reasons stated in this order, the judgment of the trial court is

AFFIRMED.