ROBERT H. ALLISON *v.* HUBER, HUNT & NICHOLS, INC.

[No. 1-1275A241. Filed May 3, 1977.]

*Feeney & Ward,* of Indianapolis, *Ging, Free & Brand,* of Greenfield, for appellant.

*Locke, Reynolds, Boyd & Weisell,* of Indianapolis, *Melville Watson,* of Greenfield, for appellee.

LYBROOK, J.—This is an appeal by plaintiff Robert H. Allison, alleging that an adverse Motion for Judgment on the Evidence should not have been granted at the close of the presentation of his evidence in a jury trial.

On January 15, 1968, Allison was employed by Sink & Edwards, a sub-contractor of defendant Huber, Hunt & Nichols, Inc. (Huber-Hunt) was at the time constructing buildings for General Motors in Indianapolis. Allison's job on the day in question was to drill holes in the side of an air scrubber that was placed on the roof of one of the buildings under construction. The air scrubber was located at the edge of the roof, and the area where holes were to be drilled was on the outside wall of the scrubber, thus Allison had to work in a very narrow area above a metal walk between the air scrubber and a dropoff. There were no barricades, fences or guards to protect the narrow walk. Allison proceeded to the narrow walk (approximately 20 inches wide) and leaned a ladder against the side of the air scrubber. In the process of drilling holes in the side of the air scrubber, Allison fell off of the roof.

Allison brought suit against Huber-Hunt alleging, *inter alia,* that Huber-Hunt had failed to live up to its standard

of care. At trial Huber-Hunt moved for a judgment on the evidence at the close of the plaintiff's case. This was granted by the trial court on the grounds that there was no duty owed to Allison, who appeals from this decision.

The quantum of evidence necessary for a plaintiff to avoid a directed verdict at the close of his case is *any* evidence or legitimate inference therefrom tending to support at least one of the plaintiff's allegations. Therefore a directed verdict is proper only when the evidence is without conflict and is susceptible of but one inference in favor of the moving party. *Mamula* v. *Ford Motor Co.* (1971), 150 Ind. App. 179, 275 N.E.2d 849.

The general rule is that one is not liable for the acts or negligence of another, unless the relation of master and servant exists between them; and that where an injury has been done by a party exercising an independent employment, the person employing him will not be liable in damages for injury or death resulting from the wrongful acts or omissions of such person, or of the servants of such party. *Scott Construction Co.* v. *Cobb* (1928), 86 Ind. App. 699, 159 N.E. 763. An exception to this rule is where a party is by law or contract charged with a specific duty,[1] *Scott, supra.* The Scott case is the Indiana genesis of the rule. The cases cited in *Scott* in support of the above exception are *City of Anderson* v. *Fleming* (1903), 160 Ind. 597, 67 N.E. 443; *City of Logansport* v. *Dick* (1880), 70 Ind. 65, and *Falender* v. *Blackwell* (1906), 39 Ind. App. 121, 79 N.E. 393.

In *Anderson* a woman was walking along a sidewalk at night, and in so doing fell into an excavation in her path. There were no warnings posted to alert passers-by to any danger. The excavation had been put there by an independent

---

1. The other exceptions apply when:
    1. the work contracted is intrinsically dangerous;
    2. the work will create a nuisance;
    3. harm will probably result unless due precautions are taken; and,
    4. the act to be performed is illegal.

contractor pursuant to a contract with the City. The contractor (who possibly would not have otherwise been liable) agreed with the City in their contract to protect the public from danger arising from the excavation. The court held that since a municipal corporation is charged *by law* with the duty of maintaining its streets in a reasonably safe condition it could not isolate itself from liability through the use of an independent contractor. Furthermore, since the contractor agreed with the City to maintain safe premises during construction it could also have been liable.[2]

In *Logansport* our Indiana Supreme Court held that a municipality could not evade its duties with respect to streets when those duties were imposed by statute. Briefly, the lawsuit resulted from the letting of contracts for waterworks. Work began after a series of subcontracts was entered into, thus causing an independent contractor status to intervene between the City and the party eventually injured. The court held that the City's duty to maintain streets was "imperative", despite the independent contractor status.

In *Falender*, the holding of the court concerned a servant performing intrinsically dangerous work. Neither of these facts are relevant in this particular opinion so we feel that *Falender* is not necessary to our analysis.

It can be seen that a party may accept by contract or have imposed upon him by statute a duty of care for the safety of third persons that is not abrogated in the presence of an intervening independent contractor. *Stewart* v. *Huff* (1938), 105 Ind. App. 447, 14 N.E.2d 322; *Denneau* v. *Ind. & Mich. Electric Co.* (1971), 150 Ind. App. 615, 277 N.E.2d 8; *Jones, Admx.* v. *IPALCO* (1973), 158 Ind. App. 676, 304 N.E.2d 337; *Hale* v. *Peabody Coal Co.* (1976), 168 Ind. App. 336, 343 N.E.2d 316.

Since such a duty was accepted by Huber-Hunt in their contract with General Motors, the extent or absence of Sink &

---

2. The plaintiff apparently failed on other grounds.

Edwards' independent contractor status is irrelevant. Put another way, the Huber-Hunt contract with General Motors is analogous to the Indiana statutes which impose on cities a standard of care with respect to streets.

Huber-Hunt argues that another part of their contract with General Motors provides that sub-contractors are to provide their own safety equipment. Even were this true it seems unlikely that such a duty could be imposed on Sink & Edwards in a contract to which it was not a party. There is *no* evidence that a duty of care was passed on to Sink & Edwards in its contract with Huber-Hunt. If there was such evidence it would seem that *Anderson* would still apply in that *both* Sink & Edwards and Huber-Hunt had a duty of care.

Our decision is strengthened by the breadth and depth of the contract clauses between Huber-Hunt and General Motors. Not only do they relate to a standard of care but they also cover a multitude of ways to meet that standard. To say as Huber-Hunt does that a later, far more limited clause negates a broad, sweeping clause is to deny any effect to that part of the broader clause not included in the specific. This is contrary to well established rules of contractual intepretation. See, for example, *Linton* v. *Linton* (1975), 166 Ind. App. 409, 336 N.E.2d 687; *Straus* v. *Yeager* (1911), 48 Ind. App. 448, 93 N.E. 877. These cases emphasize that all parts of a contract are to be read together. Meaning and intent are to be given to as much of the contract as is reasonably possible.

The clause relied upon by Allison states:

"36. TEMPORARY PROTECTION OF PERSONS AND PROPERTY

"The Contractor shall take all precautionary measures as required to adequately protect all persons from accidents or injury and property from damage or loss. Protect and continuously maintain safe pedestrian and vehicular traffic on public, private and Owner's property. All protective structures and materials shall be in accordance with applicable provisions of Federal, State and Municipal Safety Laws and Building Codes.

"Provide barricades, fences, guards, decking, planking, overhead protection and the like to protect walks, driveways, streets *and all other places subject to traffic of any kind.* Design and location of all such temporary structures shall be approved by the Architect-Engineer's Superintendent and shall be maintained until in his opinion they are no longer required. At completion of construction work, remove all temporary protective structures and repair any damage done to existing construction caused by the construction and removal of temporary protection, at no cost to the Owner. All repair and replaced work shall match materials and construction of existing adjoining areas.

"Provide and maintain warning guard lights, danger signs and flags at all temporary protective structures, pits, trenches, and other obstructions.

"Replacement shall be made to the entire satisfaction of the Owner and Architect-Engineer by the Contractor at his expense to cover any and all damages caused by failure on his part to supply and maintain adequate protection. All damaged work shall be removed and replaced by new work." (Emphasis added).

The language emphasized by Huber-Hunt is:

"53. HANDLING OF CONTRACTORS MATERIALS AND EQUIPMENT

"Unless otherwise stipulated, the Contractor shall provide and pay for all transportation required to deliver and remove from the site all materials and equipment required for work under this contract.

"The Contractor and the various Subcontractors shall handle their material and equipment with their own men and at their own expense. They shall be required to furnish all equipment, scaffolding, tools and other apparatus required for all work herein specified."

We do not agree with Huber-Hunt's contention that the latter clause frees it from a duty of care. The two clauses deal with different areas. The former (#36) relates to "Temporary Protection of Persons and Property" while the latter is denominated "Handling of Contractors Materials and Equipment". They relate to entirely separate areas of responsibility and under no circumstances could they be con-

strued in opposition to one another. It is reasonably conceivable that the duty of care mentioned in the contract is for the very eventuality that arose.

Evidence revealed an absence of "barricades, fences, guards, . . . and the like to protect walks, driveways, streets, and *all other places subject to traffic of any kind"* . . . , thus, there was evidence to support a contention of a breach of duty.

Since reasonable foreseeability is an element of proximate cause, *Dreibelbis* v. *Bennett* (1974), 162 Ind. App. 414, 319 N.E.2d 634; and since it is likely that the parties to the above agreement foresaw the occurrence and nature of eventual injuries in the absence of such protection, the granting of the motion for judgment on the evidence was erroneous. The evidence is not without conflict, or inferences in favor of Allison.

The judgment of the trial court is, therefore, reversed.

Robertson, C.J., concurs in result; Lowdermilk, J., concurs.

NOTE.—Reported at 362 N.E.2d 193.