**Walter Eugene HARRIS, Appellant (Plaintiff Below),**

v.

**KETTELHUT CONSTRUCTION, INC., Appellee (Defendant Below).**

No. 2–883A294.

Court of Appeals of Indiana, Second District.

Oct. 4, 1984.

Rehearing Denied Nov. 1, 1984.

1070

Tom F. Hirschauer, Jay T. Hirschauer, Logansport, C. Michael Cord, Bayliff, Harrigan, Cord, Maugans & Russell, Kokomo, for appellant.

James V. McGlone, Stuart & Branigin, Lafayette, for appellee.

SULLIVAN, Judge.

Plaintiff, Walter Harris (Harris) appeals from summary judgment in favor of Kettelhut Construction, Inc. (Kettelhut), upon his personal injury suit for damages.

Harris presents but one issue on appeal:

Whether Kettelhut, a prime contractor, owed a duty to Harris, an employee of a subcontractor, to maintain safety on the construction site by installing guardrails around a staging area located on the roof of a building under construction.

On September 11, 1980, the day of Harris's accident, Harris was employed as an apprentice steel worker with the Hugh J. Baker Co. (Baker). At that time, Baker was under subcontract to Kettelhut, a general contractor, to supply and install steel reinforcing bars (known as "rebar" in the trade) for an Eli Lilly Co. building project in Lafayette, Indiana. On that day, Harris and other Baker employees were installing rebar on the fourth floor roof of one of the buildings under construction.

Just prior to his accident, Harris had been unwinding a tie wire which held the steel rebar in bundles. The rebars were twenty feet long, and each bundle contained twenty to thirty rods, weighing over two hundred pounds. Harris had been untying the bundles so that a crane might lift the bars to a higher level for installation. As Harris was untying the wire, it broke loose with such force as to cause Harris to lose his balance and fall over the edge of the roof to the ground, twenty-two feet below. As a result of the fall, Harris sustained multiple injuries to his feet, ankles and legs. The roof from which Harris fell was being used as a staging area by Baker for the installation of the rebar, and, at the time of the accident, had no guardrails on the southern or eastern edges.

Harris brought suit to recover for injuries against Eli Lilly Co. and Kettelhut, alleging that each owed a duty to maintain safety on the job site, and that the duty extended to the installation of guardrails on roof areas in order to provide protection

against falls. Kettelhut joined Baker seeking indemnification should an adverse judgment obtain. The trial court entered a summary judgment in favor of Kettelhut and Eli Lilly, upon the ground that neither owed a duty to Harris to install guardrails; thus there could be no liability. Harris appeals only as to the summary judgment in favor of Kettelhut.

Summary judgment is proper only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits and testimony, disclose that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law; even if facts are not in dispute, summary judgment is still inappropriate if information before the court reveals conflicting inferences to be drawn from those facts. *Perry v. Northern Indiana Public Service Company* (4th Dist.1982) Ind.App., 433 N.E.2d 44, *trans. denied.* In reviewing a summary judgment, this court must determine whether the law was correctly applied, and in so doing, will liberally construe all evidence in favor of the non-movant and resolve any doubt as to the existence of a genuine issue against the proponent of the motion. *Perry v. Northern Indiana Public Service Company, supra.* The challenge to summary judgment in this case asserts an incorrect application of the law in the determination that Kettelhut owed no duty to Harris to provide protection against falls, and that there were no other material factual issues regarding the absence of liability on the part of Kettelhut.

Although Harris acknowledges the general rule that a prime or general contractor is not liable to the employees of its independent subcontractors for injuries sustained in the course of employment, *Hale v. Peabody Coal Co.* (1st Dist.1976) 168 Ind.App. 336, 343 N.E.2d 316, he contends, nonetheless, that Kettelhut is liable in this instance for the failure to provide protection for the employees of its subcontractors because

(1) Kettelhut had contractually assumed such a duty;

(2) Applicable statutes and regulations imposed such a duty; and

(3) Kettelhut had voluntarily and gratuitously assumed the duty, and having so undertaken, failed to perform it.

As Harris has acknowledged, a general contractor typically exercises little, if any, control over the means or manner of work of its subcontractors, and requires only that the completed work meet the specifications of the owner in its contract with the general contractor. For this reason, liability is seldom imposed upon the general contractor for the negligence of an independent subcontractor. *Hale v. Peabody Coal Co., supra,* 343 N.E.2d 316. However, there are five well recognized exceptions to the general rule:

(1) Where the contract requires the performance of work which is intrinsically dangerous;

(2) Where a party is by law or contract charged with the specific duty;

(3) Where the act will create a nuisance;

(4) Where the act to be performed will probably cause injury to others unless due precaution is taken to avoid harm; and

(5) Where the act to be performed is illegal.

*Hale v. Peabody Coal Co., supra.*

It is Harris's contention, based upon the exception stated in subparagraph (2) above, that the Kettelhut-Lilly contract imposed a specific non-delegable duty upon Kettelhut to provide fall protection for Baker's employees. The relevant portions of the contract, upon which Harris relies, are as follows:

*Article 15:*

"SAFETY: The Contractor shall take all necessary precautions for the safety of all employees on the Project, and all other persons who may be affected thereby, and shall comply with all applicable provisions of the Contract Documents and Federal, state and municipal safety laws, building, mechanical and electrical codes

and rules, regulations and restrictions to prevent accidents or injury to persons on, about or adjacent to the Project or elsewhere."

*Article 18:*

"NONASSIGNABILITY: The Contractor shall neither delegate his duty of performance nor assign, in whole or part, his rights or obligations under the Contract without the prior written consent of the Owner, and any attempted delegation or assignment without such consent shall be of no force and effect. Subject to the restrictions contained in the preceding sentence, the Contract shall be binding upon the Contractor and the Owner, their Successors, Executors, Administrators and Assigns."

*Addendum 2, Section 01500, Paragraph 1.03:*

"TEMPORARY FACILITIES AND CONTROLS:

A. Barricades and Obstruction Lights.

1. Each Contractor shall provide and maintain adequate approved barricades around obstructions and excavations resulting from his work. Where these obstructions and excavations occur at any area crossed by the public or the owner's personnel, adequate approved warning lights shall be installed on the barricades. Entrances and accesses to the roadways or walks where these obstructions and excavations occur shall also be barricaded and lighted as specified above.

B. Guard Rails.

1. Comply with recognized standards and code requirements for the erection of substantial and structurally adequate barricades and guardrails where needed to prevent accidents and losses. Paint with appropriate colors, graphics and warning signs to inform personnel at site, and the general public where exposure exists, of hazard being protected. Provide lights where appropriate and needed for recognition of facilities including flashing red lights where appropriate."

Because we find that Kettelhut, by virtue of its contract with Eli Lilly, assumed a duty to maintain safety on the construction site for *all* employees, and because that duty extended to the installation of guardrails on roofing areas where the employees of Baker, including Harris, were working, we need not inquire further into the myriad alleged statutory and regulatory violations asserted by Harris.

Kettelhut maintains that it did not assume a duty under Article 15 of the contract to provide fall protection to Harris because

(1) The contract's language is too general to impose a specific duty to erect guardrails for the benefit of the employees of subcontractors;

(2) The references within the contract to "all employees" and the safety duties must be construed to apply only to the Kettelhut's own employees and because the reference to "all other persons who may be affected thereby" is to third persons, not other construction workers on the job site; and,

(3) The contractual duties assumed by Kettelhut in its contract with Lilly were delegated to Baker in the Baker-Kettelhut contract.

■ The contract between Kettelhut and Eli Lilly imposed a contractual duty on Kettelhut to make the staging area safe for all on-site employees.

In *Allison v. Huber, Hunt & Nichols, Inc.* (1st Dist.1977) 173 Ind.App. 41, 362 N.E.2d 193, Allison, an employee of a subcontractor, was injured by a fall from a walkway. Allison sued the prime contractors, Huber, Hunt & Nichols, Inc., for breaching its duty to construct guardrails along the walkway. *Id.* 362 N.E.2d at 195. The court held that the prime contractor had assumed by contract the duty to erect guardrails for the protection of subcontractor employees.

Clause 36 of the contract considered in *Allison* required the prime contractor to "make all precautionary measures as re-

quired to adequately protect all persons from accidents or injury." *Id.* at 196. Article 15 of Kettelhut's contract requires Kettelhut to take "all necessary precautions for the safety of all employees on the project and all other persons who may be affected thereby." The language in Kettelhut's contract is as broad as the language used in the contract considered in *Allison.* Thus, as in *Allison,* Kettelhut, as prime contractor, contractually assumed the duty to keep the construction site safe for all the employees on the site, including, in this case, Harris.

Kettelhut argues that *Allison* does not control this case. In *Allison* the plaintiff fell from an unguarded walkway and the prime contractor's agreement with the owner required it to provide guards for the protection of "walks, driveways, streets, and *all other places subject to traffic of any kind.*" (Emphasis in original) *Id.* at 196. Kettelhut contends that the court in *Allison* based its decision on the fact that the fall was from a walkway and walks were specifically mentioned in the contract. However, the court in *Allison* based its decision on "the breadth and depth of the contract clauses between Huber-Hunt and General Motors." *Id.* The court did not emphasize the language which specifically indicated that the contract required guards for "all other places subject to traffic of any kind." *Id.* That language was not considered too general to impose a duty on the prime contractor to provide fall protection throughout the site for subcontractor employees. Consequently, we are unwilling to hold that the court in *Allison* would have reached a different conclusion if the plaintiff in that case had fallen from a roof rather than a walkway. The clause relied upon in *Allison* and the clause in Kettelhut's contract are specific enough to give the prime contractor the duty to provide guardrails for fall protection, even for the employees of subcontractors.

Further support is found in *Jones v. City of Logansport* (3d Dist.1982) Ind.App., 436 N.E.2d 1138, *reh. denied* 439 N.E.2d 666. In that case Jones, an apprentice plumber, was employed by a subcontractor. Jones suffered injuries while on the job and sued Zimpro, the prime contractor, for breach of its contractual duty to keep the workplace safe because Zimpro failed to have the electricity to some high voltage wires turned off.

In reversing the trial court for improper jury instructions, this court addressed the prime contractor's contractual liability. The prime contractor's agreement with the owner provided that the prime contractor would be solely responsible for all necessary safety precautions for the safety of *"all employees* on the Work, *including those of* subcontractors, the Owner, the Engineer, other subcontractors, etc., and all other persons who may be affected thereby." (Emphasis in original) *Id.* at 1148. This court held that this language had clearly abrogated the general rule and that the prime contractor had assumed a duty toward subcontractor employees. The prime contractor's contract in *Jones* specified all employees, like Kettelhut's, but then further delineated that all employees included employees of subcontractors. That distinction has no effect upon our decision, however, because the phrase "all employees on the Work," in Zimpro's contract, like the phrase "all employees on the Project" in Kettelhut's contract, necessarily includes employees of subcontractors.

Kettelhut argues that the analyses in *Allison* and *Jones* do not apply because its contract with Eli Lilly does not impose upon it a specific duty to provide project safety for subcontractor's employees. The analysis in *Allison,* as discussed above, does not support Kettelhut's position because the court in *Allison* actually relied upon the broad nature of the contract. The analysis in *Jones,* while based upon a contract which was more detailed than Kettelhut's, still relied upon the fact that the contract used the words *all employees.* Therefore, the holding in *Jones* is consistent with our holding here.

Kettelhut also cites as supporting authority, *Wyler v. Lilly Varnish Co., Inc.* (1969) 146 Ind.App. 91, 252 N.E.2d 824, *reh.*

*denied* 146 Ind.App. 91, 255 N.E.2d 123. In *Wyler,* an employee of Citizen's Gas & Coke Utility, Donald Wyler (Wyler), stepped onto what he believed to be a ramp but was actually two planks and a sheet of plastic being used to cover an air well. He fell, suffering severe injuries.

Wyler brought suit against the owner of the property, the prime contractor and two subcontractors. The jury denied Wyler damages and Wyler appealed. One issue on appeal was the trial court's refusal to admit into evidence the contract between the owner and the prime contractor.[1]

Wyler initially introduced the contract to show that the prime contractor owed him a duty to at least warn of the dangerous air well. The court noted that the job superintendent, an employee of the prime contractor, had admitted that it was his responsibility to cover and protect the air well. Therefore, the question of duty was not in issue and was not discussed by the court. Consequently, the analysis in *Wyler* is not necessary to our resolution of the primary issue before this court, i.e., whether Kettelhut, as prime contractor, owed Harris, the employee of a subcontractor, any duty to provide protection against falls.[2]

Kettelhut also relies upon the discussion in *Wyler* explaining that the liability of a prime contractor is generally premised upon the amount and type of control which the prime contractor exerts over the subcontractors. This is indeed the basis for the original rule relieving prime contractors from liability for injuries to the employees of subcontractors. However, as discussed above, by contract that general rule may be rendered inapplicable.

The *Wyler* court did state, in passing, that the contract may have been inadmissible because the promises in the contract were made "probably solely for the benefit of the parties." 252 N.E.2d 824, 834 n. 13. Therefore, *Wyler* would not have been a member of the class of persons the contracting parties intended to protect. Kettelhut contends that the contract in *Wyler* is controllingly similar. We disagree.

The contract considered in *Wyler* differs from the contract between Eli Lilly and Kettelhut in two significant aspects. First, the *Wyler* contract did not extend the prime contractor's duties to *all* employees on the project. Second, the *Wyler* contract *required* that the prime contractor bind the subcontractors to assume all of the prime contractor's obligations and responsibilities. Thus, the prime contractor in *Wyler* was *required* to delegate safety requirements contained in its contract.[3] These phrases, read in conjunction, indicate that each contractor and subcontractor would be responsible only for its own employees. Kettelhut's contract, on the other hand, gives Kettelhut, as prime contractor the *non-delegable* duty to provide project-wide safety to *all* employees. Therefore, we must conclude that Kettelhut, as prime contractor, accepted the responsibility for providing project-wide safety.

Kettelhut is correct in its assertion that a contract provision must be specific before it will impose liability upon a

---

1. The court in *Wyler* addressed four issues. First, the court condemned the trial court's instruction limiting the plaintiff at trial to the theory expressed in his complaint. However, because of a non-specific objection at trial the court could not base its reversal on that ground. *Wyler,* 252 N.E.2d at 831. Second, the court dealt with the trial court's exclusion of the contract discussed in this case, above. Third, the court upheld various instructions given by the trial court. Fourth, the court reversed and remanded the case to the trial court for a new trial because the trial court gave an instruction which contradicted an applicable statute. *Id.* at 837.

2. Wyler also attempted to introduce the contract to demonstrate what kind of duty the prime contractor owed him. The contract merely repeated duties already contained in the applicable statutes. Therefore, the court held that excluding the contract from the evidence at trial was not prejudicial.

3. The reason for the job superintendent conceding that the prime contractor had such a duty was not addressed by the *Wyler* court. Since the prime contractor could gratuitously re-accept the responsibility for project safety, our analysis is not inconsistent with the holding in *Wyler.*

prime contractor for injuries suffered by the employee of a subcontractor. *Jones v. Indianapolis Power & Light Co.* (2d Dist. 1973) 158 Ind.App. 676, 304 N.E.2d 337, *trans. denied.* However, the terms used in Kettelhut's contract are as specific as those held to bind prime contractors in *Allison, supra,* and *Jones v. City of Logansport, supra.* Such contract terms must be interpreted in light of their common meanings unless otherwise defined in the contract. *THQ Venture v. SW, Inc.* (1st Dist.1983) Ind.App., 444 N.E.2d 335. Kettelhut's contract requires it to provide all necessary protection for all employees on the project. According to Addendum 2, this includes providing guardrails wherever needed to prevent accidents and losses. The plain meaning of these terms extends Kettelhut's responsibilities to all employees who may be injured on the project, including the employees of subcontractors, and requires Kettelhut to install guardrails around the staging area from which Harris fell if reasonably necessary to prevent injury. Kettelhut argues that to interpret the contract to require them to construct guardrails around the staging area is unreasonable because Kettelhut would be required to guess where the subcontractors may be working and cause it to argue over what type safety precautions workers should take. We find this argument unpersuasive.

Kettelhut's contract with Eli Lilly contains other provisions which limit Kettelhut's safety responsibilities in certain areas. In Addendum 2, Section 01500, Paragraph 1.03(A), for example, *each* contractor is responsible for maintaining barricades around *its own* excavations. No such limitation exists toward Kettelhut's separately stated responsibility to provide guardrails. Had the parties intended to limit Kettelhut's responsibilities for providing guardrails they may have done so as they did with reference to barricades. Consequently, it is clear that Kettelhut's responsibility to provide guardrails extended to protect all employees throughout the project.

Questions and arguments about additional safety precautions which the injured worker or his immediate employer should have taken relate to whether Kettelhut's breach caused the injury, and whether the worker was contributorily negligent or assumed the risk. The possibility of such on-site disputes occurring does not relate to the issue of Kettelhut's assumption, by contract, of the responsibility to provide guardrails and does not affect the resolution of this case.

█ Kettelhut's final argument is that duties assumed through its contract with Eli Lilly were delegated to Baker, Harris's employer, a subcontractor on the project. Kettelhut ignores the fact that its contract contained a non-delegation clause. Furthermore, even if delegation properly occurred it would not relieve Kettelhut of responsibility to provide guardrails for the benefit of all the workers on the project.

Article 18, the non-delegation provision, states that:

> "[t]he Contractor [Kettelhut] *shall neither delegate his duty of performance nor assign, in whole or in part, his rights or obligations under the Contract* without the *prior written consent* of the Owner, and any attempted delegation or assignment without such consent shall be of no force and effect." (Emphasis supplied)

Kettelhut points to its purchase order with Baker as having delegated all responsibilities for providing guardrails. That purchase order states, *inter alia,* that Baker will assume the same obligations as Kettelhut. Record at 113. Baker admits signing that purchase order and admits having a copy of the project manual which explained Kettelhut's duties regarding safety precautions. However, no prior approval of such delegation by Eli Lilly is indicated by Kettelhut, nor does any appear in the record. Without Eli Lilly's prior approval Kettelhut's attempted delegation is of no force or effect and Kettelhut remains singularly liable for failing to provide guardrails.

█ Even if Kettelhut had obtained prior approval, however, Kettelhut would still be jointly liable with the subcontractor for Harris's injuries. For example, in *City of Anderson v. Fleming* (1903) 160 Ind. 597,

67 N.E. 443, the Indiana Supreme Court found that the city remained jointly liable with a contractor for the injuries caused the plaintiff by the contractor's failure to fulfill its contractual duty to keep the sidewalks safe. The city's duty could not be evaded or suspended by any act of its own.[4] *See also, Allison v. Huber, Hunt & Nichols, Inc., supra,* 362 N.E.2d at 196. Therefore, Kettelhut's possible delegation of its duties does not relieve it of potential liability for failing to provide guardrails at the staging area.

Although we have determined that Kettelhut owed a duty to Harris to provide protection, we do not decide whether Kettelhut is liable for his injuries. Inasmuch as the question of liability is not presently before this court and because there are material factual issues as to whether Kettelhut's breach of its duty was the proximate cause of Harris's fall, the question of liability must be determined at trial. Accordingly, we reverse the summary judgment and remand to the trial court for further proceedings consistent with this opinion.

BUCHANAN, C.J., and SHIELDS, J., concur.

---

4. The court concluded that the city and the contractor were jointly and severally liable to the plaintiff. Under the court's analysis the city could sue the contractor for subrogation if the contractor had, as alleged, breached a duty of its own. *Anderson,* 67 N.E. at 445. This issue of subrogation is not presently before this court.