**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 10 2013, 5:29 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**PAUL D. LUDWIG**
Redman Ludwig, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEES:

**CHARLES C. HOPPE, JR.**
Knight Hoppe Kurnik & Knight, LTD.
Schererville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| NATHAN and DEANNA FERGUSON, | ) | |
| | ) | |
| Appellants-Petitioners, | ) | |
| | ) | |
| vs. | ) | No. 29A05-1301-CT-8 |
| | ) | |
| SHIEL SEXTON COMPANY, INC., WR DUNKIN & SON, INC., LYNCH, HARRISON & BRUMLEVE, INC., L'ACQUIS CONSULTING ENTERPRISES INDIANAPOLIS, LLC, d/b/a L'ACQUIS CONSULTING ENGINEERS, CSO ARCHITECTS, INC., BEATY CONSTRUCTION, INC., THE HAGERMAN GROUP, INC., d/b/a HAGERMAN CONSTRUCTION COMPANY, COMPLETE MASONRY SERVICES, INC., BYBEE STONE COMPANY, INC., PURDY MASONRY, INC., SIMPLEXGRINNEL, LP, ERMCO, INC., and LITHKO CONTRACTING, INC. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Appellees-Respondents. | ) | |

**APPEAL FROM THE HAMILTON SUPERIOR COURT**
The Honorable Steven R. Nation, Judge
Cause No. 29D01-1110-CT-10575

**October 10, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Nathan and Deanna Ferguson appeal from the trial court's order granting summary judgment in favor of Poynter Sheet Metal, Inc. in their negligence action against Poynter and others. The Fergusons present the following issue for our review, which we restate: Did the trial court err by granting Poynter's motion for summary judgment on the issue of duty?

We affirm.

The Fergusons filed a complaint in Hamilton County against Poynter and fourteen other defendants seeking damages for injuries Nathan alleged that he sustained on October 20, 2009, while working on the construction of the Carmel Regional Performing Arts Center in Carmel, Indiana, and for Deanna's consequent loss of consortium. The Fergusons claim that on that date, Nathan, who was an employee of General Piping, Inc., was traversing the worksite when the composite-wood (OSB board) temporary walkway placed on the worksite for use by project workers to gain access to their project work areas broke beneath him causing physical injuries, including an injury to his left knee. The Fergusons alleged that the OSB board was placed across a void in the building's foundation by either Shiel Sexton Company, Inc. or at its direction by another of the named defendants. They contended that the OSB board was unsuitable for use as a temporary walkway because it deteriorated from exposure to the weather and ultimately broke.

On March 16, 2012, Poynter filed a motion for summary judgment on the issue whether Poynter owed a duty to Nathan to refrain from creating or permitting a hazardous condition at the project site. The trial court held a hearing on the motion, and after taking the matter under consideration, granted Poynter's motion. The Fergusons now appeal.[1]

In an Indiana summary judgment proceeding, "the party seeking summary judgment must demonstrate the absence of any genuine issue of fact as to a determinative issue, and only then is the non-movant required to come forward with contrary evidence." *Jarboe v. Landmark Cmty Newspapers of Ind., Inc.*, 644 N.E.2d 118, 123 (Ind. 1994). T.R. 56(C) provides in pertinent part:

> At the time of filing [a] motion [for summary judgment] or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. A party opposing the motion shall also designate to the court each material issue of fact which that party asserts precludes entry of summary judgment and the evidence relevant thereto. The judgment sought shall be rendered forthwith if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Summary judgment should not be entered where material facts conflict or where conflicting inferences are possible. *Miller v. Monsanto Co.*, 626 N.E.2d 538 (Ind. Ct. App. 1993). When we review the grant or denial of a motion for summary judgment our standard of review is the same as that used by the trial court. *J.C. Spence & Assoc., Inc. v. Geary*, 712 N.E.2d 1099 (Ind. Ct. App. 1999). We must determine whether there is a genuine issue of

---

[1] Alt Wizig Engineering, Inc., a named defendant in this matter, has entered an appearance on appeal, but was not a movant or participant in the summary judgment proceedings from which this appeal was taken.

material fact and whether the moving party is entitled to judgment as a matter of law. *Id*. In resolving those inquiries, we consider only the evidence that has been specifically designated to the trial court. *Id*. The party appealing the trial court's ruling has the burden of persuading this court that the trial court's decision was erroneous. *Id*. A summary judgment determination shall be made from any theory or basis found in the designated materials. *Id*. "We give careful scrutiny to the pleadings and designated materials, construing them in a light most favorable to the non-movant." *Id*. at 1102 (quoting *Diversified Fin. Sys., Inc. v. Miner*, 713 N.E.2d 293, 297 (Ind. Ct. App. 1999)).

Our Supreme Court has observed the following: An employee's rights and remedies against his or her employer on account of jobsite injuries are governed by the Indiana's Worker's Compensation Act. But that Act does not restrict an injured employee from pursuing a claim against any "other person than the employer." Ind. Code [Ann.] § 22-3-2-13[(West, Westlaw current with all 2013 legislation)]. *Hunt Constr. Grp, Inc. v. Garrett*, 964 N.E.2d 222, 224 (Ind. 2012).

The Fergusons' complaint against Poynter and the other defendants, none of which are Nathan's employer, alleges negligence. The three elements of negligence are a duty owed to the plaintiff by the defendant, a breach of that duty by the defendant, and injury to the plaintiff proximately caused by that breach. *Kincade v. MAC Corp.*, 773 N.E.2d 909 (Ind. Ct. App. 2002). "Negligence will not be inferred; rather, all of the elements of a negligence action must be supported by specific facts designated to the trial court or reasonable inferences that might be drawn from those facts." *Id.* at 911. An inference resting on no

4

more than speculation or conjecture is not a reasonable inference. *Kincade v. MAC Corp.*, 773 N.E.2d 909.

Furthermore, we have held that a negligence action is generally not appropriate for disposal by summary judgment. *Id*. A defendant in a negligence action, however, may obtain summary judgment in such an action when the undisputed facts negate at least one element of the plaintiff's claim. *Id*. Here, the question involves the existence of a duty.

"Whether a defendant owes a duty of care to a plaintiff is a question of law for the court to decide." *Winchell v. Guy*, 857 N.E.2d 1024, 1027 (Ind. Ct. App. 2006). On appeal, the argument presented by the Fergusons is that Poynter had a contractual, non-delegable duty to Nathan and that argument is supported by reference to several provisions in Poynter's contract with the Carmel Redevelopment Commission (CRC). Poynter contends that the Fergusons have waived arguments based upon various portions of Poynter's contract by failing to make the appropriate designations and argument when the trial court was considering the issue. Arguments not presented to the trial court on summary judgment are waived for purposes of appeal. *Grinnell Mut. Reinsurance Co. v. Ault*, 918 N.E.2d 619 (Ind. Ct. App. 2009).

In support of its motion for summary judgment, Poynter designated the Fergusons' complaint, Poynter's answer and affirmative defenses, and the affidavit of Bill Clements, Poynter's project manager at the work site. Attached to Clements's affidavit was a copy of Poynter's contract with the CRC. Poynter argued in its memorandum of law in support of its motion that Poynter owed no duty to Nathan because Poynter was not an owner of the

5

premises, nor was Poynter a general contractor. Poynter was not doing any work in the area of the alleged incident, and none of Poynter's employees placed, maintained, or controlled the walkway or the walkway area. Nathan was not an employee, agent, or servant of Poynter or any of Poynter's subcontractors.

The Fergusons designated three documents to the trial court in opposition to Poynter's motion for summary judgment. The first document was the Fergusons's complaint. In the complaint, no reference is made to a contractual duty on the part of Poynter to Nathan. The second document was the affidavit of Bill Clements. In his affidavit, Clements denied the existence of a duty to Nathan as Nathan was not an agent of or in the employ of Poynter or any of Poynter's subcontractors. Clements denied that anyone associated with Poynter had anything to do with the placement or maintenance of the temporary walkway. The third document was a copy of the OSHA Multi-Employer Citation Policy. Under OSHA regulations, according to the Multi-Employer Citation Policy, a duty is imposed on contractors and subcontractors to protect all employees, whether their own employee or the employee of another from hazardous conditions at a work site.

In response, Poynter alleged that the Fergusons did "not present any argument that Poynter owed [Nathan] a duty of care under common law, contract or statute." *Appellants' Appendix* at 204. Poynter noted that the Fergusons relied solely upon OSHA regulations and cited to *Stumpf v. Hagerman Constr. Corp.*, 863 N.E.2d 871, 876 n2 (Ind. Ct. App. 2007), for the proposition that "a duty cannot be created by an OSHA regulation alone."

6

During the summary judgment hearing, counsel for the Fergusons made the following argument to the trial court:

> Under the contract that Poynter had with the City of Carmel for its work on the Performing Arts Center which is sponsored by their Affidavit, at Section 620, there are provisions 620.1, 620.2 that provide that the contractor, being Poynter, will comply with all applicable laws regarding the safety and precautions to be taken on the project. Applicable laws include OSHA regulations, Your Honor. And the OSHA regulations cited in our Reply [B]rief specifically place the Plaintiff in the [protected] class from all contractors' safety responsibilities. Under the OSHA Multi-Employer Citation Policy, the responsibility covers all contractors on the site. Each contractor has a duty under OSHA to protect other employees, not only their own, from perils. And Poynter specifically assumed that obligation and that duty as a matter of contract in its contract with the City of Carmel. . . .

*Transcript* at 11-12. Thus, the argument has not been waived, and consistent with our standard of review, we will consider the additional arguments made by the Fergusons, the non-movants, that Poynter's duty to Nathan arose by contract.

On appeal, the Fergusons contend that Poynter, as a contractor at the worksite, had a duty to abide by OSHA regulations. They cite to a provision of Poynter's contract whereby Poynter agrees to comply with "all present and future federal, state[,] and local laws, executive orders, rules, regulations[,] codes and ordinances which may be applicable" to Poynter's performance under the contract. *Appellants' Appendix* at 85. The Fergusons claim that Poynter's duty to Nathan arose from the contract because OSHA requirements are federal regulations. Under OSHA regulations, according to the Multi-Employer Citation Policy, employers on multi-employer worksites have a duty to protect all employees whether their own employee or the employee of another from hazardous conditions at a work site. CPL 02-00-124.

7

As we stated in *Armstrong v. Cerestar USA, Inc.*, 775 N.E.2d 360, 368 (Ind. Ct. App. 2002) and noted in *Stumpf v. Hagerman Constr. Corp.*, 863 N.E.2d at 876, "an OSHA standard cannot be used to expand an existing common law or statutory duty, or be used as evidence of an expanded duty of care." Here the question is whether a duty arose contractually. A duty of care, the breach of which will support a negligence action, may arise contractually. *Plan-Tec, Inc. v. Wiggins*, 443 N.E.2d 1212 (Ind. Ct. App. 1983).

> In interpreting a written contract, it is the duty of the trial court to interpret the contract so as to ascertain the intent of the parties. It must accept an interpretation of the contract that harmonizes its provisions as opposed to one which causes the provisions to be conflicting. The meaning of a contract is to be determined from an examination of all its provisions, not from a consideration of individual words, phrases or even paragraphs read alone.
>
> The court will attempt to determine the intent of the parties at the time the contract was made as disclosed by the language used to express their rights and duties. If the contract is ambiguous or uncertain in its terms and if the meaning of the contract is to be determined by extrinsic evidence, its construction is a matter for the fact finder. If, however, as here, the ambiguity arises because of the language used in the contract and not because of extrinsic facts, then its construction is purely a question of law to be determined by the court.
>
> On appeal we will independently evaluate a pure question of law, substituting our judgment for that of the trial court if necessary.

*Teitge v. Remy Constr. Co., Inc.*, 526 N.E.2d 1008, 1010-11 (Ind. Ct. App. 1988) (internal citations omitted).

Borrowing again from our Supreme Court's opinion in *Hunt Constr. Grp, Inc. v. Garrett*, we reproduce the following passage here:

> A brief overview of the construction industry as it relates to this case is a helpful starting point. "Construction management" has grown in recent decades as an alternative to the conventional approach to large construction

8

projects. A conventional construction project typically features owners, architects, engineers, general contractors, and subcontractors with discrete project responsibilities, none of which consist of overall management of the construction project as a primary activity. In contrast, construction management separates and consolidates the management function in one entity called the construction manager. Construction management offers certain advantages over the conventional approach—sophisticated cost estimating capabilities, practical analysis of design alternatives, and shortened development processes. It also has its disadvantages—higher fees, coordination problems, and a lack of single-point responsibility for both the construction process and the construction product. A construction manager undertakes a variety of responsibilities as specified in a written contract between the construction manager and the project owner. And some of these responsibilities often relate to jobsite safety.

964 N.E.2d at 224-25 (internal citations omitted). We now turn to the provisions of

Poynter's contract with the CRC.

The contract was attached to Clements's affidavit. Important definitions are included

in the City of Carmel Standard General Conditions for Construction Contracts, which was

explicitly incorporated in Poynter's contract. The definitions follow:

CONSTRUCTION MANAGER—Shiel Sexton Co., Inc., acting by and through the Carmel Redevelopment Commission.

CONTRACTOR—The person, firm or corporation with whom OWNER has entered into the Agreement.

Laws and/or Regulations—Laws, rules, regulations, ordinances, codes, administrative actions and/or orders of any court or governmental agency or unit.

OWNER—The City of Carmel, Indiana.

Project—The total construction of one or more improvements or structures of which the Work to be provided under the Contract Documents may be the whole, or a part, as indicated elsewhere in the Contract Documents.
Work—The entire construction, or the various separately identifiable parts thereof, required to be furnished under the Contract Documents. The Work is

the result and product of performing services, furnishing labor and furnishing and incorporating materials and equipment into the construction, all as required by the Contract Documents.

*Appellants' Appendix* at 92-95. Armed with the pertinent contractual definitions, we turn to the provisions at issue.

The agreement entered into between the City of Carmel by the CRC and Poynter was entitled "AGREEMENT, City of Carmel, Indiana, Bid Package #4310—HVAC Sheet Metal, Agreement #2695-4310" and consisted of several documents and attachments. *Id.* at 82. The Fergusons contend that section 5.9, which establishes the Contractor's agreement to comply with government regulations, is the basis for Poynter's duty to Nathan. Section 5.9 provides as follows:

Government Compliance

CONTRACTOR [Poynter] agrees to comply with all present and future federal, state and local laws, executive orders, rules, regulations, codes and ordinances which may be applicable to CONTRACTOR'S performance of its obligations under this Agreement, and all relevant provisions thereof are incorporated herein by reference. CONTRACTOR agrees to indemnify and hold harmless OWNER [CRC] from any loss, damage or liability resulting from any violation of such laws, orders, rules, regulations, codes and/or ordinances. This indemnification obligation shall survive the termination of this Agreement.

*Id.* at 85. They claim that since Poynter agreed to comply with federal regulations, and since OSHA regulations and the Multi-Employer Citation Policy are federal regulations, Poynter owed a duty of care to Nathan. Poynter, on the other hand, cites Section 5.4, which provides that nothing contained within the agreement gives any rights or benefits to anyone other than the Owner and the Contractor.

Section 6.2 provides as follows:

> 6.2 <u>Resident Superintendent</u>—Contractor [Poynter] shall keep on the work site at all times during its progress a competent resident superintendent, who shall not be replaced without written notice to Owner, Construction Manager, and Engineer except under extraordinary circumstances. The superintendent [Clements] will be Contractor's representative at the site and shall have authority to act on behalf of Contractor. All communications given to or issued by the superintendent shall be as binding as if given to or issued by Contractor.

*Id*. at 108. Section 6.4 contains the following language:

> 6.4 <u>Full Responsibility</u>. Unless otherwise specified in the Contract Documents, Contractor shall furnish and assume full responsibility for all material, equipment, labor, transportation, construction equipment and machinery, tools, appliances, fuel, power, light, heat, telephone, water, sanitary facilities, and all other facilities, services and incidentals necessary for the furnishing, performance, testing, start-up and completion of the Work.

*Id*. An additional provision, which is contained in Section 6.14, is relied upon by the

Fergusons and states:

> <u>Laws and Regulations.</u> CONTRACTOR shall give all notices and comply with all Laws and Regulations in effect during the furnishing and performance of the Work. Except where otherwise expressly required by applicable Laws and Regulations, neither OWNER nor CONSTRUCTION MANAGER nor ENGINEER shall be responsible for monitoring CONTRACTOR's compliance with Laws or Regulations.

*Id*. at 110.

One of the attachments, Exhibit A, which was incorporated into the contract, provides

as follows with respect to "**SAFETY/QUALITY CONTROL**:"

> --Prime Contractor responsible for quality control and sign-off forms
> --CM will have hold points throughout the work
> --Shiel Sexton does have a full time safety manager on site to enforce *project* safety.

11

*Id*. at 89 (Emphasis supplied). Furthermore, in regard to safety, Section 6.20.1 provides in

pertinent part as follows:

> CONTRACTOR shall be solely responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the Work and shall take all necessary precautions for the safety of, and provide the necessary protection to prevent damage, injury or loss to (i) all employees on the Work and other persons and organizations who may be affected thereby, (ii) all the Work and all materials or equipment to be incorporated therein, whether in storage on or off the site, and (iii) other property at the site or adjacent thereto, including trees, shrubs, lawns, walks, pavements, roadways, structures, utilities and Underground Facilities not designated for removal, relocation or replacement in the course of construction.

*Id.* at 112.

In *Teitge v. Remy Constr. Co., Inc.*, 526 N.E.2d 1008 (Ind. Ct. App. 1988), we

analyzed a very similar issue. In *Teitge*, a negligence action arose from an injury suffered by

an employee of one of several prime contractors doing work on a multi-employer

construction site. The appeal involved the determination of a duty, if any, owed to the

injured employee by a prime contractor who was not the employee's employer. The contract

between the prime contractor and the project owner included language that also appeared in

the contracts of other prime contractors to the effect that the contractor "shall comply with all

applicable provisions of Federal, State, and Municipal safety laws and building codes to

prevent accidents or injury to persons on, about or adjacent to the premises where the work is

being performed." *Id*. at 1011.

We stated the following about the plaintiff's argument about the prime contractor's

duty in that situation:

12

Teitge fails to show how this provision of the contract—applicable to each and every prime contractor on the construction site—imposes upon Remy, one prime contractor, any duty to Teitge, an employee of another prime contractor. Indeed, Paragraph 1(B) of the General Conditions makes it clear that the word "Contractor," when not further qualified, refers to all contractors on the site. Thus, here, the word "Contractor" does not refer only to Remy and, standing alone, we cannot conclude that this provision of the contract imposes upon each contractor a duty to protect all of the employees on the job site.

In fact, it makes no sense to conclude that the contractors were required to constantly inspect the work of the employees of all the other contractors, to supply their omissions, and to neutralize the dangerous effects of their negligent workmanship. It is more logical to conclude that each contractor was responsible for protecting its own employees during the performance of its portion of the contract. Otherwise, the cost of avoiding or insuring against such potential liability would be entirely out of proportion to anticipated profits for most, if not all, of the contractors. Furthermore, chaos would reign supreme on any job where several contractors with divergent concepts of safety might take seriously their supposed duty to supervise the safety practices of themselves and each other.

Such a chaotic result cannot reasonably be said to have been envisioned by the parties. Where one construction of a contract would make it unusual and extraordinary, but another, equally consistent with the language, would make it reasonable, just, and fair, the latter construction must prevail.

*Id*. at 1011-12.

The cases to which we are directed by the Fergusons are factually distinguishable from the present case and as such are not controlling here. For example, in *Moore v. Shawmut Woodworking & Supply, Inc.*, 788 F.Supp.2d 821 (S.D. Ind. 2011), a general contractor was found to owe a contractual duty of care to a subcontractor's employee. The contractual language used was such that a contractual duty of care arose with respect to all employees at the worksite. That contract stated that the contractor "shall be fully and solely

13

responsible for the jobsite safety of such means, methods, techniques, sequences or procedures. . . ." *Id*. at 825.

In *Perryman v. Huber, Hunt & Nichols, Inc.*, 628 N.E.2d 1240 (Ind. Ct. App. 1994), a worker in charge of setting four steel, I-beam columns at a construction worksite was killed when he fell approximately ninety feet to his death. His widow brought an action alleging negligence and the failure to enforce OSHA regulations as the proximate cause of her husband's death. We reversed the trial court's conclusion that the construction management company had not assumed a duty to ensure worker safety at the project site. The construction management company had argued that because each of the individual contractors contractually agreed to comply with all state and federal regulations, the construction management company was relieved of its project-wide duty to enforce safety regulations. We held that the fact the individual contractors also agreed to comply with state and federal regulations did not relieve the construction management company of its duties, but rather made both the individual contractor and the construction management company potentially liable.

In *Stumpf v. Hagerman*, 863 N.E.2d 871, an employee of an independent contractor who had been hired by a subcontractor brought a negligence action against the subcontractor and general contractor for injuries the employee suffered during his work on a construction project. We reversed the trial court's order granting summary judgment in favor of the general contractor and subcontractor. In so doing, we held that the contract language "evinces intent by the parties to charge [the general contractor] with a duty of care for the

safety of all the employees on the project, including the employees of its subcontractors." *Id.* at 878. The pertinent contract language that we interpreted read as follows:

> The Contractor shall take all necessary precautions for the safety of employees on the work, and shall comply with all applicable provisions of Federal, State, and Municipal safety laws and building codes to prevent accidents or injury to persons on, about or adjacent to the premises where the work is being performed. . . . Contractor shall designate a responsible member of its organization on the work, whose duty shall be the prevention of accidents.

*Id.* at 877. That language illustrated what we concluded was an intent to make the general contractor follow applicable laws for the benefit third parties, *i.e.*, those on or about the premises. Language in the present case provided that Poynter would indemnify the CRC for any violation of the law. *Appellants' Appendix* at 85.

Further, in *Harris v. Kettelhut Constr., Inc.*, 468 N.E.2d 1069 (Ind. Ct. App. 1984), the employee of a subcontractor brought an action against the prime contractor and owner for damages due to injuries sustained after a fall on the worksite. In that case we acknowledged the general rule that because a general contractor typically exercises little, if any, control over the means or manner of work of its subcontractors, requiring only that the completed work meet the contractual specifications of the owner, liability is seldom imposed on the general contractor for the negligence of a subcontractor. 468 N.E.2d at 1072. We also acknowledged five well-recognized exceptions to the general rule, in particular, where a party is by law or contract charged with a specific duty. The general contractor's contract with the owner provided that the general contractor "shall take all necessary precautions for the safety of all employees on the Project, and all other persons who may be affected thereby." *Id.*

The trial correctly found that Poynter did not have a duty of care arising by contract to Nathan. Poynter's contract specifically provided that Poynter was responsible for "all safety precautions and programs in connection with the *Work* and shall take all necessary precautions for the safety of, and provide the necessary protection to prevent damage, injury or loss to (i) all employees on the *Work* and other persons and organizations who may be affected thereby." *Appellants' Appendix* at 112 (emphasis supplied). Of note is the use of the word "Work" instead of "Project." The work Poynter was called on to perform involved the HVAC system on the project, and not the digging of trenches or other work pertaining to foundations or walkways.

The Fergusons, however, direct us to Poynter's contractual duty to comply with OSHA's Multi-Employer Citation Policy, CPL 02-00-124. Specifically, the Fergusons claim that Poynter was required to make sure that the cover over the hole was capable of supporting at least twice the weight of employees, equipment and materials that it would be exposed to at any time, ensure that any covers are secured when installed to prevent accidental misplacement by wind, equipment or employees, and to ensure that the cover was color-coded or marked with a warning of the hazard such as 'HOLE' or 'COVER.' *Appellants' Brief* at 18-19 (citing 29 CFR § 1926.501(i); § 1926.502(i)(3); § 1926.502(i)(4)).

The Fergusons' argument fails because Poynter was not a creating, exposing, correcting, or controlling employer. Under OSHA's Multi-Employer Citation Policy, a creating employer is "[t]he employer that caused a hazardous condition that violates an OSHA standard." *Appellants' Appendix* at 199. The only designated evidence in the record

16

pertinent to that characterization comes from Clements's affidavit in which he attests that neither Poynter, "nor any of its agents or employees or anyone under its supervision or control had anything whatsoever to do with placing or maintaining the alleged temporary walkway at the location where Nathan Ferguson alleges that he was injured." *Id*. at 80. Thus, the only relevant designated evidence in the record supports Poynter's contention that it was not a creating employer.

Next, an employer can be cited for an OSHA violation if it is an exposing employer. An exposing employer is defined as "an employer whose own employees are exposed to the hazard." *Id*. at 199. Again, turning to the evidence designated to the trial court, Clements's affidavit established that Poynter "did no work outside of the building at the entrance to the construction site" where the alleged incident occurred. *Id*. at 79. The Fergusons have claimed only that Poynter's employees were exposed to the hazard, and have failed to support their claim by the designation of evidence in support of it.

Because the Fergusons have claimed that the hazard existed and was not corrected prior to Nathan's alleged worksite injury, we do not and need not address whether Poynter was a correcting or controlling employer. In sum, the Fergusons have failed to establish that the trial court erred.

Our resolution of this appeal finds support in a case from the Seventh Circuit Court of Appeals. In *Anning-Johnson Co. v. U.S. Occupational Safety & Health Rev. Comm'n*, 516 F.2d 1081 (1975), the Seventh Circuit Court of Appeals considered the potential liability of subcontractors on a multi-employer construction site under OSHA. The issue in *Anning-*

*Johnson* was whether subcontractors working at a multi-employer construction site could receive OSHA citations or could be held liable for OSHA penalties for nonserious violations of promulgated standards to which their employees were exposed, but which the subcontractors neither created nor were responsible for by contract. In finding that the subcontractors could neither be cited nor held liable for penalties in that situation, the Seventh Circuit set out the parties' positions, which we find instructive here. The position advanced by the Secretary of Labor in favor of liability follows:

> (T)hese contentions by Respondent evade the real issue which is the exposure, if any, by Respondent of his employees to hazards. The underlying duty of each and every employer under Section 5 of the Act, regardless of whether an alleged violation was predicated upon paragraph (a)(1) or (a)(2) thereof, is to refrain from exposing employees to hazards. The Act grants no exceptions nor does it permit any delegation of this duty. The Act does not abridge the right to contract, it merely implies that an employer cannot by contract evade this duty to furnish a place of employment that is free of hazards. This duty is imposed upon each employer and makes no distinction as to whether the employer is a general contractor or a subcontractor; it may even include a lessor of employees relinquishing all control. Further the Act does not allow for any severance of responsibility predicated upon who produced or created the hazard or who may initially be responsible for its eradication.
>
> Simply stated, whenever a subcontractor exposes his employees to hazards the employer subjects himself to the enforcement provisions of the Act and this is so regardless of who created the hazard or who may be responsible for its elimination.

*Id*. at 1085 (quoting *Charles S. Powell d/b/a Powell Elec.*, 3 OSSAHRC 1056, 1060-61 (1973)). The opposing position was summed up as follows and lends support to our resolution of this appeal:

> Admittedly, the respondent is responsible for the "place of employment," yet no one should conclude that such responsibility imposed by the Act embraces the entire work project as shown in this case. This responsibility is the

18

responsibility of the prime contractor. What then is the responsibility of the respondent, as a subcontractor employer? His responsibility is his worksite or that portion of the work as provided in his contract of employment. Under the Act, the respondent is required to comply with occupational safety and health standards and upon doing so, complys (sic) with the Act by furnishing a place of employment which is free from recognized hazards that are causing or likely to cause death or serious physical harm to his employees. Laws usually follow the rule of reason and thus it would not be reasonable to require a subcontractor to insure a safe workplace for his employees, if to do so would embrace an entire work project on which numerous other contractors' employees are working.

Under section 9(a) (29 U.S.C. s 658(a)) of the Act it is mandatory for an abatement period to be fixed with respect to each alleged violation. Respondent then is required to correct any violations, but can he correct a violation, the creation of which was not of his doing nor over which he has any control? Can respondent correct a violation which by doing so would interfere with the work endeavor of another subcontractor? Did Congress intend for an employer to correct a violation, to cease his portion of the work he is required to perform under contract, although the cause of the violation has no relation to his portion of the work under contract? Certainly, these queries must be resoundingly answered in the negative.

*Id.* at 1085-86 (quoting *Robert E. Lee Plumbers, Inc.,* OSHRC Docket No. 2431 at 7-8).

The Fergusons have failed to establish that the trial court erred by the entry of summary judgment in favor of Poynter on the issue of duty of care.

Judgment affirmed.

BARNES, J., and CRONE, J., concur.

19